MARY L. CHASE *vs.* PHŒNIX MUTUAL LIFE INSURANCE COMPANY.

Cumberland. Decided May 3, 1877.

*Insurance.*

A policy indorsed by the company, "Non-forfeiting life policy," contained these terms: "it being understood and agreed that if after the receipt by this company of not less than two or more annual premiums this policy should cease, in consequence of the non-payment of premiums, then upon a surrender of the same, provided such surrender is made to the company within twelve months from the time of such ceasing, a new policy will be issued for such sum as is proportionate with the annual payments which have been made." *Held*, that the right of the assured in the policy did not depend upon the surrender of the policy and the taking out of a new paid up policy. The provision that the policy shall cease and determine upon the non-payment of any of the annual premiums, on or before the date specified, cannot be construed as defeating the right to recover thereon such proportionate part of the amount insured, while there is an express stipulation in the same condition that upon such failure of payment, the company will not be liable for the whole sum insured, but only for such proportionate part.

Cancellation of the policy upon the books of the company without the knowledge and consent of the assured cannot affect his rights. Upon a policy, like this, distinctly made non-forfeitable in part, by partial non-payment of premiums, nothing in the application looking to an avoidance of the policy and a forfeiture of premiums by such non-payment, can be received to work such forfeiture.

ON REPORT.

ASSUMPSIT, on a policy of insurance of the tenor following:

[Indorsement.] " NON-FORFEITING LIFE POLICY."

" No. 23,634. THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY, OF HARTFORD, CONN. INSURANCE ON THE LIFE OF GRANVILLE M. CHASE. IN FAVOR OF MARY L. CHASE.

"Amount, $2000. Date, Dec. 5, 1867. Term of life. Annual payment, $223.50. Policy, $1.00. $224.50.

"Five years' payments, with guarantee of paid-up policy.

[Margin.] "Annual premium, $223.50. Sum insured, $2000. Age 40 years. Term, Life. 5 payments.

[Policy.] "This Policy of Assurance witnesseth, that the Phœnix Mutual Life Insurance Company, of Hartford, Connecticut, in consideration of the representations made to them in the application for this policy, and of the sum of two hundred and twenty-three dollars and fifty cents, to them duly paid by Mary L. Chase, daughter, and of the annual payment of a like amount on or before the fifth day of December, in every year during the continuance of this policy, or until five full annual payments have been made, do assure the life of Granville M. Chase, of Portland, in the county of Cumberland, state of Maine, for the sole use of Mary L. Chase, in the amount of two thousand dollars, for the term of his natural life.

"And the said company do hereby promise and agree to pay the amount of the said insurance at their office, in the city of Hartford, Conn., to the said assured, for her sole use, if living, in conformity with the statute ; and if not living, to her heirs, or assigns, in ninety days after due notice and proof of the death of the said party whose life is hereby insured, any indebtedness to the company on account of this policy being first deducted therefrom.

"It being understood and agreed, that if, after the receipt by this company of not less than two or more annual premiums, this policy should cease in consequence of the non-payment of premiums, then, upon a surrender of the same, provided such surrender is made to the company within twelve months from the time of such ceasing, a new policy will be issued for the value acquired under the old one, subject to any notes that may have been received on account of premiums ; that is to say, if payments for two years have been made, it will issue a policy for two-fifths of the sum originally insured ; if for three years, for three-fifths ; and in the same proportion for any number of payments, without subjecting the assured to any subsequent charge, except the interest annually, in advance, on all premium notes unpaid on this policy.

" This policy is issued and accepted by the assured upon the following express conditions and agreements :

" First. That said Granville M. Chase shall not visit certain latitudes, &c.

" Secondly. If the said premiums shall not be paid at the office of the company, in the city of Hartford, Conn., or to an agent of the company, on his producing a receipt, signed by the president or secretary on or before the date above mentioned, then, in every such case, the said company shall not be liable for the payment of the whole sum assured, but only for a part thereof, proportionate with the annual payments made as above specified, and this policy shall cease and determine.

" Thirdly. In every case where this policy shall cease and determine, or become or be null and void, for any cause other than non-payment of premiums, then all payments thereon shall be forfeited to this company.

" This policy to take effect when countersigned by W. I. Hough, agent at Portland, Me.

" In witness whereof, the said Phœnix Mutual Life Insurance Company, of Hartford, Conn., have by their president and secretary, signed and delivered this contract this fifth day of December, one thousand eight hundred and sixty-seven. Signed, E. FESSENDEN, President. Signed, J. F. BURNS, Secretary."

The plea was the general issue with a brief statement of the terms of the policy on which the defense relied. It was admitted, that Granville M. Chase made three annual payments on policy No. 23,634, as per receipts exhibited; that he died as alleged in the plaintiff's writ, December 28, 1873.

That Mrs. Helen Chase will testify that she went to the office in Hartford, Conn., and offered proofs of the death of her husband, Granville M. Chase, and that the company declined to receive the same on the ground that all rights under said policy had been forfeited.

That neither Granville M. Chase, nor any person for him, ever paid any premium due on the policy after December, 1869; nor subsequent to the failure to pay the fourth annual premium, ever applied to the company for a paid up policy during the time in

which he would have been entitled to the same under the terms of the policy, nor was the policy surrendered to the company within two years from the time the payment was last made.

That the books of the company show that in January, 1871, an entry was made on them to the effect that the policy in suit was canceled, and that the application signed by Granville M. Chase, if admissible for that purpose, would show that it contained this clause: "That should the applicant . . . neglect to pay the premium on or before the day it becomes due, the policy shall become null and void, and all payments thereon shall be forfeited."

Jesse T. Reynolds, called by the defendant, testified as follows: I am the general agent for Maine for the Phœnix Mutual Life Insurance Company, of Hartford, Conn.; was acquainted with Granville M. Chase in his lifetime. I came to Maine as general agent, about August, 1870; found on the books of the agency this policy of Chase, and also that the policy had lapsed for non-payment of premiums the December previous, which would be December, 1869; hunted Mr. Chase up, and had several interviews with him on the subject of renewing his policy; urged him with all the eloquence I had as insurance men generally do, to renew his policy. Of course, I could make something out of it, and that was one of the reasons I had for doing it. He gave me various reasons why he could not pay—that he was hard up, and one thing and another. Up to the time he left to go to Chicago, I saw him I don't know but a dozen times, and when he decided that he would not renew his policy I then explained to him fully what his rights would be, as I understood them, that if he did not renew his policy he would have to take a paid-up policy, or else surrender everything, and I advised him strongly to take a paid-up policy. I did not do that, however, until he made up his mind not to renew. He used some strong language about the matter, and wouldn't do anything more about it; said "it might go to the devil," or something like that.

The foregoing testimony was seasonably objected to by the counsel for the plaintiff, but admitted subject to objection.

Upon so much of the foregoing evidence as is admissible the full court is to order such judgment as the rights of the parties require.

*J. D. Fessenden*, for the plaintiff.

The second express condition in the policy fixes the liability of the defendants. It is three-fifths of the amount insured, less any indebtedness to the company on account of the policy.

It is, by its terms, a "non-forfeiting" policy. Bliss on Insurance, 405.

Neither subsequent entries on the company's books, nor any agreement in the application, are admissible to vary the terms of the policy.

The "intention of the parties is always to be sought for in the instrument itself."

" And though in a written commercial contract it is necessary to go out of the instrument itself, more frequently than in most others, yet the instrument being understood is conclusive of the rights and liabilities of the parties, and its provisions are not subject to be controlled or superseded by preliminary negotiations or communications, or by verbal agreements." 1 Phillips on Insurance, § 120. *Sleght* v. *Hartshorne*, 2 Johns. 531, 539. *Bell* v. *Western Fire Marine Ins. Co.*, 5 Rob. (La.) 423. *Graves* v. *Boston Insurance Co.*, 2 Cranch—opinion page 439.

Declarations of G. M. Chase were inadmissible, because, first, he was neither a party in interest nor a party to the record ; second, he could not waive any right that had accrued, or might accrue to the plaintiff.

The cases where the policies have been held to be forfeited by the non-payment of premiums have been on the ground of a clause to that effect in the policy itself.

*S. C. Andrews*, for the defendants, cited in his argument, the following cases. *Pitt* v. *Berkshire Life*, 100 Mass. 500. *Williams* v. *Washington Life*, 4 Bigelow's Life Insurance Reports, 56. *Union Life* v. *McMillen, id.* 384. *Hodges* v. *Guardian Life, id.* 621. *Robert* v. *New England Life, id.* 634. *Simpson* v. *Accidental Death Ins. Co., id.* 497.

BARROWS, J. The defendants "in consideration of . . . . and $223.50, . . . . and of the annual payment of a like amount on or before the fifth day of December in every year during the continuance of this policy, or until five full annual payments

have been made," issued December 5, 1867, a document which they labeled in capital letters, "A Non-forfeiting Life Policy," of insurance for $2,000 on the life of one G. M. Chase, in favor of this plaintiff, the daughter of the person insured. Five annual payments were to entitle her to a paid-up policy for $2000. Three such payments were made, but none after December, 1869. G. M. Chase died in 1873, and the required proofs of death were offered, but the company declined to receive them, claiming that all rights under the policy had been forfeited.

The language of the policy is: "This policy is issued and accepted by the assured upon the following express conditions and agreements : " [The conditions set forth under the first head relate to the acts and doings of the person whose life was insured, and to the cause of death; and it is not claimed that any of them were broken.]

" Secondly. If the said premiums shall not be paid at the office of the company, in the city of Hartford, Conn., or to an agent of the company on his producing a receipt signed by the president or secretary, on or before the date above mentioned, then, in every such case, the said company shall not be liable for the payment of the whole sum assured, but only for a part thereof, proportionate with the annual payments made as above specified, and this policy shall cease and determine."

" Thirdly. In every case where this policy shall cease and determine, or become or be null and void, for any cause other than non-payment of premiums, then all payments thereon shall be forfeited to this company."

Elsewhere, not among "the conditions and agreements," upon which "the policy is issued and accepted," we find the following : " It being understood and agreed that if after the receipt by the company of not less than two or more annual premiums, this policy should cease in consequence of the non-payment of premiums; then upon a surrender of the same, provided such surrender is made to the company within twelve months from the time of such ceasing, a new policy will be issued for the value acquired under the old one subject to any notes that may have been received on account of premiums ; that is to say, if payments for two years have been made, it will issue a policy for two-fifths of the sum originally

insured; if for three years, for three-fifths, and in the same proportion for any number of payments, without subjecting the assured to any subsequent charge except the interest annually in advance, on all premium notes unpaid on the policy."

The question is whether this last recited understanding and agreement is so connected with the conditions and agreements upon which the policy is issued and accepted as to work a forfeiture of all rights under this "non-forfeiting policy" when the insured neglected to surrender the policy and apply for a reduced paid-up policy within twelve months after the failure to pay the fourth annual premium.

Stipulations for a forfeiture in a policy thus labeled should be strictly construed. We do not think the second express conditions should be so construed as to make the right of the insured to recover such part of the sum as is "proportionate with the annual payments" which have been made, dependent upon the surrender of the policy within twelve months after the first failure to meet an annual payment and upon the reception of a new policy. If such had been the design of the provisions respecting the issue of new policies, it would have been easy to say so. But there is no such stipulation. The terms upon which the company will issue paid-up policies, (which the insured would doubtless find more convenient and available to be used, as they often are, as security for a loan) are stated by themselves. There is no necessary connection between them and the second express condition, nor anything to indicate that the limited liability recognized in. that condition is to be ignored, unless the insured surrenders the old and takes out a new policy. The meaning and effect of that condition seems to be that a failure to pay one of the annual premiums on or before the day specified will put an end to the contract for the whole sum, at the option of the insurers; and thereafterwards they will be liable only for such proportion thereof as the payments previously made bear to the whole amount of the premiums stipulated for. It may serve to enable the company, when there is a failure of prompt payment, to rid themselves of a bad risk for anything in excess of that which has not been already secured by the payments previously received; but not to convert

a non-forfeiting policy into a forfeitable one, nor to relieve the company from the limited liability which they expressly admit in it.

The third condition implies that there is to be no forfeiture, by mere non-payment of premiums, of payments already made; and this is in keeping with the express stipulation which we think is decisive of the rights of these parties, that upon such a failure of payments as occurred here "the said company shall not be liable for the payment of the whole sum assured, but only for a part thereof, proportionate with the annual payments made as above specified." Bliss on Life Insurance, § 249.

The cancellation of the policy upon the books of the company was done without the knowledge or consent of Mary L. Chase, or any one authorized to act for her, and is of no avail.

In the face of such a policy as this, nothing in the application, looking to an avoidance of the policy and a forfeiture of payments for failure to make them promptly and completely, can be received to work such a forfeiture. It is one of the cases where the instrument itself "is conclusive as to the rights and liabilities of the parties, and its provisions are not subject to be controlled or superseded by preliminary negotiations and communications." 1 Phillips on Ins., § 120. *Graves* v. *Boston Insurance Co.*, 2 Cranch, 439.

Nor if the subsequent conferences between G. M. Chase and the agent of the company, were admissible in evidence, do we perceive anything in them that could affect the rights of this plaintiff already acquired, upon the view which we take of the construction of the policy. The plaintiff is entitled to judgment for $1200, less the amount of the notes given on account of premiums, and interest on the same reckoned annually in advance. Upon the balance thus found the plaintiff can recover in addition interest from the date of the writ only, for lack of evidence as to the time when the proofs of death were submitted to the company.

*Judgment for plaintiff accordingly.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN, and LIBBEY, JJ., concurred.