DESIRE, The (DECATUR v.). See Case No. 4,111.

## Case No. 3,821.

### DESMAZES v. MUTUAL BEN. LIFE INS. CO.

[7 Ins. Law J. 926; 7 Reporter, 136; 19 Alb. Law J. 220.][1]

Circuit Court, D. Massachusetts. Oct. 7, 1878.

LIFE INSURANCE — NON-FORFEITURE STATUTES — WAIVER — FOREIGN COMPANIES AND CONTRACTS — CONFLICT OF LAWS.

[1. The original non-forfeiture act of Massachusetts, being expressly limited to insurance companies "chartered by authority of this commonwealth" (Gen. St., 2d Ed., c. 186, § 1), does not apply to a New Jersey corporation doing business in Massachusetts; nor was it extended by Supp. Gen. St. 1872, c. 325, § 7, any further than to include contracts of foreign companies made within the state.]

[Followed in Smith v. Mutual Life Ins. Co., 5 Fed. 583.]

[2. A party may waive statutory provisions in his favor when no principle of public policy is violated thereby; and this is done in the case of a life insurance non-forfeiture act, when, after failure to pay premiums, the assured takes

[1] [7 Reporter, 136, and 19 Alb. Law J. 220, contain only partial reports.]

advantage of an alternative provision in his policy, by receiving dividends thereunder.]

[Applied in Caffery v. John Hancock Mut. Life Ins. Co., 27 Fed. 28.]

[3. A policy issued to a citizen of Massachusetts by a New Jersey corporation at its principal office in New Jersey, where the premiums and loss are made payable, upon an application received and transmitted by its Massachusetts agent, who has no authority to contract, the policy being then transmitted to the agent and delivered by him, is a New Jersey contract, and is not governed by the Massachusetts law.]

[Followed in Whitcomb v. Phoenix Mut. Life Ins. Co., Case No. 17,530.]

[This was an action on a policy of life insurance issued by a New Jersey corporation to plaintiff on the life of her husband.]

Dwight Foster and Alfred D. Foster, of Boston, for defendants.

The policy was non-forfeitable, never became void through non-payment of premium, therefore the act did not apply. The insured had a right to waive the provisions of the law in favor of another stipulation, and did so waive by accepting a paid-up policy. Chase v. Phoenix Life Ins. Co., 67 Me. 85; Maxw. Interp. St. § 348; East India Co. v. Paul, 7 Moore. P. C. 86; Markham v. Stanford, 14 C. B. (N. S.) 376; Rumsey v. North-Eastern Ry. Co., Id. 641; Morrison v. Underwood, 5 Cush. 52; Tombs v. Rochester & S. R. Co., 18 Barb. 583; Buel v. Trustees of the Village of Lockport, 3 N. Y. 197; Sedg. St. & Const. Law, 109; Farmers' & Drovers' Ins. Co. v. Curry (Ky. Ct. App., 1877) 13 Bush. 312. The act of 1861 applied originally only to Massachusetts corporations. Nor were the provisions of the statute of 1861 made applicable to the present contract by St. 1872, c. 325, § 7. Obviously these statutes can have no influence upon any policy which is not a Massachusetts contract and governed by its laws, even though made with a resident or citizen of Massachusetts. No such extraterritorial power is possible. Baldwin v. Hale, 1 Wall. [68 U. S.] 223; Green v. Collins [Case No. 5,755]; D'Arcy v. Ketchum, 11 How. [52 U. S.] 173; Pennoyer v. Neff [95 U. S. 715].

The present policy is a New Jersey contract. The premiums and loss are payable there; the policy recites that it is signed and delivered there, and it is not countersigned by a Massachusetts agent, who had no authority to bind his principal or complete the contract. Insurance Co. v. Davis, 95 U. S. 428; Sav. (Guth. Ed.) 175; Ex parte Heidelback [Case No. 6,322]; Whart. Confl. Laws, §§ 406, 420. No premium was ever paid in Massachusetts. The inception of the contract was in New Jersey. Tayloe v. Merchants' Ins. Co., 9 How. [50 U. S.] 398.

The rule as to contracts of insurance is well established. "The general rule seems to be that a contract of insurance is subject to the law of the place where the policy is issued —where the corporation issuing it has its seat—where the loss, if it be incurred, is to be paid. When the policy is procured by correspondence, this rule continues to obtain; and this, whether the policy is sent by mail or delivered by agent to the party insured." Whart. Confl. Laws, § 465; Sav. (Guth. Ed.) p. 196, and note A, p. 215 (quoting Bar); Westl. Priv. Int. Law, § 221; Ruse v. Mutual Ben. Life Ins. Co., 23 N. Y. 521; Spratley v. Mutual Ben. Life Ins. Co. (Ky. Ct. App.) 4 Bigelow, Cas. 84; Parker v. Royal Exchange Assur. Co., 8 Ct. Sess. Cas. (2d Series) 365; Huth v. New York Mut. Ins. Co., 8 Bosw. 551; Hyde v. Goodnow, 3 N. Y. 267; Western v. Genesee Mut. Ins. Co., 12 N. Y. 259; Wright v. Sun Mut. Ins. Co. [Case No. 18,095]. The general principles applicable to all classes of contracts lead to the same conclusion. Green v. Collins [Case No. 5,755]; Hill v. Spear, 50 N. H. 263; Story, Confl. Laws, §§ 242, 280; Andrews v. Pond, 13 Pet. [38 U. S.] 65; Don v. Lippmann, 5 Clark & F. 13; Fergusson v. Fyffe, 8 Clark & F. 121; Penobscot & K. Ry. Co. v. Bartlett, 12 Gray, 246; Ex parte Holthausen (1874) 9 Ch. App. 722. The authority of the agent to bind the company distinguishes. Pattison v. Mills, 1 Dow & C. 342; Daniels v. Hudson River Ins. Co., 12 Cush. 416; Kennebec Co. v. Augusta Ins. Co., 6 Gray, 208; Heebner v. Eagle Ins. Co., 10 Gray, 131; Bailey v. Hope Ins. Co., 56 Me. 474; Meagher v. Aetna Ins. Co., 20 U. C. Q. B. 607. Morris v. Penn Ins. Co., 120 Mass. 503, decides nothing whatever except that "St. 1861, c. 186, applies by force of St. 1872, c. 325, to foreign as well as domestic insurance companies." Maine has one non-forfeiture law; Massachusetts another; California and Missouri have still different statutes. If a life insurance company is disabled from entering into any contract which does not tacitly incorporate into itself the statute law of the state where the first premium is paid and the policy delivered, the business of such institution will be circumscribed, if not crippled, and constant confusion will result.

CLIFFORD, Circuit Justice. Contracts are to be construed and carried into effect according to the intention of the parties thereto, and they are presumed to contract with reference to the law of the place where they reside and transact their business, unless a different intention is manifest from the terms which they employ. Green v. Collins [supra]. Sufficient appears in the agreed facts to show that the corporation defendants, on the 26th of June, 1874, in consideration of the matters alleged, issued a policy of life insurance to the plaintiff, then the wife of George G. Desmazes, since deceased, insuring the life of her husband, who was at the time a citizen of Chelsea, county of Suffolk, and commonwealth of Massachusetts, in the sum of one thousand dollars, for the term of his life; that the defendants are a corporation organized under the laws of New

Jersey, and are engaged in the business of issuing policies of insurance upon the lives of persons residing in various parts of the United States; that they have agents appointed for certain special purposes, but such agents are not authorized to make, alter or discharge contracts, or to waive forfeitures, or grant permits. Instead of that, it appears on the face of the policy in this case that policies are issued by the company in consideration, among other things, of the payment by the assured of the first and each succeeding premium, at their office in the city of Newark, and that the policy is executed at said office, and that the loss is payable at the same place. Agents are appointed by the company who are authorized to receive premiums, but only on the production of the company's receipt, duly signed by the president or treasurer thereof, and the agreed facts show that the corporation has complied with the laws of Massachusetts in the appointment of an agent in that state for the purpose which those laws contemplate. Those agents are only authorized to receive applications from persons desiring insurance, and to forward such applications to the office of the corporation, where, if the application is accepted, a policy is issued and sent by mail to the agent in the state from which the application came, to be there delivered by said agent to the insured upon payment of the first premium.

On June 26th, 1874, the corporation, at their office in Newark, issued to the plaintiff a policy upon the life of the decedent in the sum of one thousand dollars, which was sent by mail to the corporation's agent in Massachusetts, and was by him delivered to the plaintiff, she being then, and now, a citizen of that state. Prior to that there had been some dealings between the parties; and it appears she gave up a former policy upon the life of her husband, and received in exchange the present policy with a receipt for the first premium of $54.81, and also a receipt for $35.98, applicable in part payment for the second premium, which would become due in one year. Due surrender was made, and the old policy with the surrender was transmitted by the agent to the office of the company in Newark, with the application for the second policy. Desmazes, the husband of the plaintiff, died July 28, 1876, and due notice and proof of his death was given by the plaintiff to the defendants. No further payment of premiums was made by the plaintiff. Two dividends became due on the policy, both of which were paid. Of these, one became due for $10.05, June 26, 1875, and was paid to the plaintiff in cash. By the terms of the policy, in case the premiums shall not be paid on or before the several days mentioned for the payment thereof, at the office of the company in the city of Newark, or to agents when they produce receipts signed by the president or treasurer, then, and in every such case, the company will, on the above terms and conditions, pay the sum of fifty dollars for every annual premium paid. Conforming to these terms and conditions the company, June 26, 1876, made a second dividend to the plaintiff of sixty-five cents, as upon a paid-up policy for fifty dollars, which was also paid to the plaintiff in cash, as appears by the receipt appended to the agreed facts. Except paying the premiums, all the conditions of the policy were fulfilled by the plaintiff, and the parties agree that if the court shall hold that Mass. St. 1861, c. 186, applies to the contract made between the plaintiff and defendants, then judgment shall be rendered for the plaintiff in the sum of nine hundred and twenty-five dollars, with interest from October 27, 1876; otherwise the judgment shall be for the plaintiff in the sum of eighty-five dollars and ninety-eight cents, with interest from the same date. Where the facts are agreed they cannot be controverted, and the agreed statement in this case expressly declares that the policy at the death of the person whose life was insured was in force for fifty dollars only, unless the provisions of Mass. St. 1861, c. 186, apply to the contract. By the express terms of the contract the insured was at liberty to omit paying the premiums at the times and place mentioned in the policy, and in that event the policy did not become forfeited or void, but became a paid-up policy for an amount proportioned to the premiums previously paid. Fifty dollars, it is stipulated, shall be paid in that event for every annual premium previously paid in fulfillment of the contract between the parties, which, as the plaintiff contends, tends strongly to show that the policy did not become forfeited, and that the case does not fall within the said Massachusetts statute. Failure to pay the stipulated premiums, it may well be urged, does not forfeit the policy, as the stipulation in that event is that the company will, on the prescribed terms and conditions, pay the sum of fifty dollars for every annual premium paid. Chase v. Phoenix Mut. Life Ins. Co., 67 Me. 91; Dorr v. Same, Id. 441. Nor does the present case come within the spirit of the Massachusetts statute, the object of which was, where by the terms of such a policy an absolute forfeiture had been incurred by the non-payment of premiums, to grant an equitable extension of the contract for a term proportionate to the net value of the policy. Nothing is contained in the statute to indicate that the legislature intended to withdraw the clear right which the insured had outside of the statute, to waive the non-forfeiture provision if the other party consented, and to accept a different stipulation of a more favorable character in lieu of the same. Everyone, says Maxwell, has a right to waive and to agree to waive the advantage of a law or rule made solely for the benefit and protection of the individual, and which may be dis-

pensed with without infringing any public right or public policy. Maxw. Interp. St. 348; Buel v. Trustees of the Village of Lockport, 3 N. Y. 197; Tombs v. Rochester & S. R. Co., 18 Barb. 485; Morrison v. Underwood, 5 Cush. 55; Farmers' & Drovers' Ins. Co. v. Curry, 13 Bush, 312; Markham v. Stanford, 14 C. B. (N. S.) 376; Rumsey v. North-Eastern Ry. Co., Id. 641.

Contracts in general will not usually have the effect to modify a statute, but to this rule there is a large class of exceptions. Cases often arise where a party is held at liberty to waive statutory provisions in his favor, and Mr. Sedgwick lays it down as a general rule that where no principle of public policy is violated, parties may waive the provisions of a statute which, if fulfilled, would operate in their favor, and that proposition is fully sustained by many other authorities. Sedg. St. & Const. Law, 109. Even if doubt could be entertained whether the statute in question could be waived when the policy was originally taken, there can be none that such waiver and election could be made when the premiums became payable and the insured ceased to make the stipulated payments, and if so, then the matter is placed beyond doubt, as the agreed facts show that the insured, subsequent to her failure to pay premiums, accepted a dividend declared in her favor as upon a paid-up policy for fifty dollars. When the parties undertake in the policy itself to declare the meaning and effect to be given to its stipulations, they have a right to do so except in cases where there is some provision in the statute to indicate an intention on the part of the legislature to control the action of the parties in that respect. There is nothing of the kind contained in the original act referred to, as it is plain that its terms do not apply to any other than Massachusetts corporations. Supp. Gen. St. Mass. (2d Ed.) c. 186, § 1, p. 73. By the express terms of the act its provisions are limited to life insurance companies, "chartered by the authority of this commonwealth." Created as the defendant corporation was by the laws of New Jersey, it is clear that it is not within the words of that statute. Considered in that light, it is clear that in Massachusetts it is a foreign insurance company, and that as such it is liable to be excluded altogether from the state, or may be admitted to do business there upon such conditions as the state may impose and the company may accept. Paul v. Virginia, 8 Wall. [75 U. S.] 181; Insurance Co. v. Morse, 20 Wall. [87 U. S.] 445; Doyle v. Insurance Co., 94 U. S. 535. No sound construction can treat the language, "chartered by the authority of this commonwealth," as equivalent to "doing business in this commonwealth," and if not, then it follows to a demonstration that the provisions of that statute did not originally apply to such a corporation. All corporations, associations, partnerships or individuals, doing business in Massachusetts, under any charter, compact, agreement or statute of that state or of any other state involving an insurance, guaranty, contract or pledge for the payment of annuities or endowment, or for the payment of moneys to families, as representatives of policy or certificate holders, are considered and deemed by the statute law of the commonwealth to be life insurance companies within the meaning of the statute of the state relating to life insurance, and the same section of the statute provides that they shall not make any such insurance, guaranty, contract or pledge therein, or to or with any citizen or resident of the state, which shall not distinctly state therein the amount of such life benefit, the manner of payment, the period of the continuance thereof, and the amount of the annual, semi-annual or quarterly premiums, or by which the payment of the life benefit to assured shall be contingent upon the payment of assessments made upon surviving members, nor except in accordance with and under the conditions and restrictions of the statute now or hereafter regulating the business of life insurance. Gen. St. Mass. p. 1029, c. 325, § 7. Suppose the original act did not apply to a case like the present before the passage of the latter act, still it is insisted by the plaintiff that the closing paragraph of the seventh section in the latter act gives it that effect, and the plaintiff relies with confidence upon the case of Morris v. Penn Ins. Co., 120 Mass. 504, decided by the supreme court of that commonwealth, for supporting that proposition.

In examining that question it must be assumed that the true construction of the two statutes is that which is given to them in that case by that court. Much difficulty arises, however, in ascertaining how far that decision goes, inasmuch as the report of the case fails to give a definite statement of the facts. Enough appears to show that the policy lapsed by the neglect of the assured to pay the annual premium; that the assured afterward, at his request, underwent a new examination by the medical examiner of the company, at his expense; that the policy was subsequently reinstated, and that the assured paid at Boston a premium on the reinstated policy, and failed to make any other payment. Appended to that is the statement that the agreed facts showed that the defendants were liable to the plaintiff according to the provisions of the non-forfeiture act of the state, from which the clear inference is that the contract, by the settled rules of law, was a Massachusetts contract. Unless the contract was a Massachusetts contract it is clear that those statutes could not have had any controlling influence in the case, it being settled that the laws of a state cannot have any extraterritorial operation in that regard. Baldwin v. Hale [supra]; Green v. Collins [supra]; D'Arcy v. Ketchum [supra]; Pennoyer v. Neff, 95 U. S. 720.

Argument to show that the contract in this case was a New Jersey contract is hardly necessary, as that proposition is fully sustained by the agreed facts. Viewed in the light of the agreed facts, everything indicates that the parties contracted with reference to the law of New Jersey, and without any reference to the law of Massachusetts. Both parties concede the following propositions: (1) That the company was chartered by the legislature of New Jersey. (2) That Newark is its established place of business. (3) That the annual premiums were payable at Newark. (4) That the Massachusetts agent was not authorized to make, alter, or discharge contracts, waive forfeitures, or grant permits. (5) That policies are issued by the company at Newark, their place of business, and that the losses, if any, are payable there. (6) That agents can only receive premiums when furnished with receipts duly signed by the president or treasurer of the company. (7) That they are only authorized to receive applications for insurance, and to transmit the same to the office of the company at Newark. (8) That the policy of the applicant, if accepted, is signed at Newark, and sent by mail to the agent. (9) That all the agent does at that time is to deliver the policy as directed. (10) That the agent does not countersign the instrument, nor does he do any act to give it validity. (11) That the new application, with the one surrendered, was sent by the agent to Newark, for the action of the company. (12) That the application was accepted at Newark, where the policy was executed, and forwarded by mail. (13) That all the agent did was to deliver the policy with the two receipts, which were executed at Newark, and sent with the executed policy to the agent for delivery. (14) That the only act done within the commonwealth of Massachusetts was the delivery, by the agent, of the policy with the two receipts, in pursuance of the company's directions. Tested by these facts, which cannot be successfully contested, the court is of the opinion that the case falls within the controlling rule following: That the seat of the continuous business of the corporation was at Newark, and that the contract was made and was to be performed there, and must be interpreted by the law of the place where it was made. Sav. (Guth. Ed.) 175; Ex parte Heidelback [Case No. 6,322]; Whart. Confl. Laws, § 426.

Decided support to that proposition is also found in another section from the last-named author, in the words following: "Where an agent having no power to complete a contract, obtains orders in a foreign state, which orders he forwards to his home principal, who accepts and fills them, the seat of the contract is in the state in which the principal resides," which is the exact case before the court. Whart. Confl. Laws, § 406; Hyde v. Goodnow, 3 N. Y. 267; Backman v. Jenks, 55 Barb. 469. Insurance contracts are in general subject to the laws of the place where the policy is issued, and where the corporation issuing it has its seat, and where the loss, if it be incurred, is to be paid. When the policy is procured by correspondence, still the same rule obtains; nor does it make any difference whether the policy is sent by mail or delivered by an agent to the party insured, as courts will presume that the contract is governed by the law of the place where the policy was completed and issued. Whart. Confl. Laws, § 465; Ruse v. Mutual Ben. Life Ins. Co., 23 N. Y. 516; Parker v. Royal Exch. Assur. Co., 8 Ct. Sess. Cas. (2d Ser.) 372. It appeared in the case last cited, that a citizen of Scotland made proposals for an insurance upon the life of a Scotchman to an English insurance company, and thereafter received a policy, which was prepared at the head office in London, and then transmitted to the Edinburgh agents, by whom it was delivered to the insured, and to whom he made payment of premium. Held by the whole court, the judges delivering opinions seriatim, that the contract was English, because the Edinburgh agents were not authorized to conclude contracts binding the company. The Lord Justice-Clerk said that the insured received a policy in English form, and that his proposal for the same was transmitted to the London company, the Scotch agents not undertaking, and not being entitled to bind the company. "Although the life may be in Scotland, or the party insuring it, yet it is an undertaking in England. The company do the business of insurance there; there they undertake the risks; there they insure, so far as the business has locality. * * * The delivery of the policy is only the delivery of the document of debt, by which each becomes mutually bound, and by which the assured holds the proof of the obligation, but the thing done is to insure in England, and that the company does." Three or more questions were involved, but the one most discussed was whether interest should be allowed, and Lord Moncrieff said: "If we must follow our own law we must find interest due, but if we are satisfied that the law of England ought to rule the question, no interest can be awarded." "If the locus contractus and also the locus solutionis are ascertained to be in one country, the law of that country must rule all questions touching the effect of the contract." Taking those questions to be settled, it follows that if the policy was made in England the result would be that the contract is English, and that all must be ruled by the law of England. Much stress was laid in that case upon the fact that the policy was by the agent delivered in Scotland; but the answer of Lord Cockburn to that argument is decisive. Speaking of the agent, the learned justice said the agent was the mere hand that transmitted, probably with his opinion, the proposals, and was to receive

and deliver the policy; that he did nothing that might not have been done by mail, as the policy which he delivered was an English policy, executed according to English law, and bearing no reference to any foreign locus solutionis, either of the premium or of the sum insured. Western v. Genesee Mut. Ins. Co., 12 N. Y. 263; Westl. Confl. Laws, § 221; Sav. (Guth. Ed.) 215. Authorities to show that the validity of a contract is to be decided by the law of the place where it is made are numerous, and it is clear that the proposition is correct, unless it was agreed, either expressly or tacitly, that it should be performed in some place, and then the general rule is that the contract, as to its validity, nature, obligation, and interpretation, is to be governed by the law of the place of performance. Green v. Collins [Case No. 5,755]; Hill v. Spear, 50 N. H. 262; Story, Confl. Laws (6th Ed.) § 242; Andrews v. Pond, 13 Pet. [38 U. S.] 65; Don v. Lippmann, 5 Clark & F. 13; Penobscot & K. Ry. Co. v. Bartlett, 12 Gray, 246; Meagher v. Aetna Ins. Co., 20 U. C. Q. B. 607. When the agents have authority to bind the company by entering into contracts without reference to the head office, the contract is held in many cases to be made at the place where the agent is established, which makes it necessary to keep in mind that the agent in this case had no such authority, and that the contract was made, and was to be performed at the office in the state where the charter was granted. Daniels v. Hudson River Ins. Co., 12 Pick. 422; Kennebec Co. v. Augusta Ins. Co., 6 Gray, 205; Heebner v. Eagle Ins. Co., 10 Gray, 134. Pursuant to the rule adopted, the plaintiff is entitled to judgment in the sum of eighty-five dollars and ninety-eight cents, according to the agreed facts, but nothing is said about costs in the agreed statement. Costs, therefore, would in general be awarded in favor of the plaintiff, but the defendants state in their brief that on May 26, 1877, they filed in the case an offer in writing to be defaulted, and that judgment might be rendered in favor of the plaintiff for ninety-five dollars and interest, and the plaintiff did not, within ten days after receiving notice of the offer, accept the same. and that the amount recoverable is less than the sum so offered. Gen. St. Mass. c. 129, §§ 62, 63; Rev. St. §§ 914–916. Under the agreed facts the plaintiff recovers less than the amount so offered, and of course the defendants are entitled to costs from the date of the offer to be defaulted.

Judgment for plaintiff in the sum of $85.98, with costs to the time of the offer; costs for the defendants from the date of the offer.