SHEERER, Guardian, *v.* MANHATTAN LIFE INS. CO.*

*Circuit Court, D. Kentucky.* June 5, 1883.)

1. INSURANCE—CONSTRUCTION OF POLICY.
    Insurance policies are to be construed most strictly against the companies.
2. SAME—STIPULATION.
    In a stipulation in a policy that the policy shall determine if the premium be not paid "on or before the day" fixed, time is of the essence of the contract, and the policy determines if the premium be not paid on or before the day.
3. SAME—PAID-UP POLICY.
    But where the company, by a separate instrument, afterwards agreed, after the payment of three annual premiums, to issue a paid-up policy for a proportionate amount, on the surrender of the policy to the company "on or before it shall expire by the non-payment of the fourth or any subsequent annual premium," the time of the surrender is not of the essence of the contract, and specific performance will be decreed if the surrender is made in a reasonable time.

BARR, J. The defendant, the Manhattan Life Insurance Company, issued, on the ninth of May, 1866, a policy insuring the life of William F. Duerson for the benefit of his wife, Sallie W. Duerson, and for her sole and separate use, if she survived her husband; if not, then the insurance money was to go to her children.

This policy was for $10,000, payable at the death of William F. Duerson, and the premiums were to be paid in 10 annual payments.

The policy provided—

"That the Manhattan Life Insurance Company, in consideration of the sum of $491.40, to them in hand paid by Mrs. Sallie W. Duerson, * * * and of the annual premium of $491.40, to be paid on or before the ninth day of May (or half or quarter yearly in advance, with interest) in every year, for nine

*Reported by Geo. Du Re le, Asst. U. S Atty.

years, during the continuance of this policy, do assure the life of William F. Duerson, * * * in the amount of $10,000, for the term of his natural life."

The policy also provided that—

"In case the said Sallie W. Duerson shall not pay the said premiums on or before the day hereinbefore mentioned for the payment thereof, then, and in every such case, the said company shall not be liable for the payment of the sum assured, or any part thereof ; and this policy shall cease and determine."

The premiums due May 9, 1867, to May 9, 1870, inclusive, were paid when due, and none were paid after that time.

After the delivery of this policy—when, is not alleged—the defendant delivered to Mrs. Duerson a printed obligation and agreement which is in these words :

"It is hereby understood and agreed that after the receipt by the Manhattan Life Insurance Company of not less than three annual premiums on within policy, No. —, and on the surrender of said policy to the said company on or before it shall expire by the non-payment of the fourth or any subsequent annual premium, the said company will issue a policy, not subject to any further charge for annual premiums, payable at the death of the within-named William F. Duerson, in the amount of three-tenths of the sum originally insured under said policy, subject to all the terms and conditions of the same: provided, however, that no forfeiture by reason of any violation of any of the terms and conditions of said policy shall have occurred; and in the same proportion, and on the same terms and conditions, after any further payment of annual premiums, to-wit:

"After 3 annual payments, 3-10 of the sum originally insured.
   "  4    "      4-10  "   "   "   "
   "  5    "      5-10  "   "   "   "
   "  6    "      6-10  "   "   "   "
   "  7    "      7-10  "   "   "   "
   "  8    "      8-10  "   "   "   "
   "  9    "      9-10  "   "   "   "

"C. F. WEMPE, Secretary.                    HENRY STOKES, President."

It is also provided in the original policy that "in every case when this policy shall cease, or become or be null or void, all previous payments made thereon shall be forfeited to the said company."

William F. Duerson died in October, 1882. The complainants, as guardians of Mattie W. Duerson and Fidelia F. Duerson, have sued, alleging these facts and tendering in court the policy. They alleged that Mrs. Duerson died before William F. Duerson, and that the policy had not been forfeited on or prior to May 9, 1871, and that they are entitled, by the terms of the policy and agreement, to a paid-up policy for $5,000, or to the payment of $5,000, with interest from

November 1, 1882. They also allege the coverture of Mrs. Duerson and the infancy of the complainants, and that defendant collected usurious interest, which was included in the premiums paid, and they claim they are entitled to profits, which were not paid or credited, and that their proportion of a paid-up insurance should be increased thereby. The defendant has demurred to the bill, and insists there is no cause of action, because, by the terms of the policy, it ceased and determined upon the non-payment of the premium due May 9, 1871, and that the right to a paid-up policy was upon condition of the surrender of the old policy on or before the expiration of that policy, which was May 9, 1871, and that neither the coverture of Mrs. Duerson, nor the infancy of the complainants, should prevent the defendant from having the benefit of the agreement. The complainants insist that the words of the agreement, "that after the receipt by the Manhattan Life Insurance Company of not less than three annual premiums on the within policy, No. —, and on the surrender of said policy to the said company *on or before it shall expire* by the non-payment of the fourth or any subsequent annual premium, the said company will issue a policy, not subject to any further charges for annual premium," etc., recognize and give the assured the right to a paid-up policy for the proper proportion which the premiums paid bear to the $10,000, *after the expiration* of the old policy by reason of the non-payment of accruing premiums, and that the surrender of that policy may be now made. This agreement should be read with the policy, and the two constitute the contract between the parties.

Insurance companies are entitled to the benefit of their contracts, but in construing them it is just and fair the language of them should be construed most strongly against the company. This is because their agreements are prepared in advance with the utmost skill, care, and deliberation, and are usually accepted by the assured without a careful consideration and examination of the language used. *Nat. Bank* v. *Ins. Co.* 95 U. S. 673. The provision in this policy that it should cease and determine upon the non-payment of any of the premiums when due, was subject to the terms of the agreement as to the right of the assured to a paid-up policy; as was also the right of the company to the premiums paid, and claimed to be forfeited by this non-payment. The payment of premiums under this policy was not a condition precedent, but a condition subsequent, to the insurance of Duerson's life. It was not a policy renewed from year to year, but, by its terms, continued during the life of Duerson, subject to be null

and void for certain specified reasons, and to be determined by the non-payment of the premiums. *Thompson* v. *Ins. Co.* 104 U. S. 260.

The agreement entitled the assured, by its terms, to a paid-up policy, after the payment of three annual premiums, on the surrender of the policy to the company "on or before it shall expire" by the non-payment of the fourth or any subsequent premiums. There is some doubt as to the meaning of the word "on" in this sentence. "Before it shall expire" includes all of the time up to the instant of the expiration of the policy by the non-payment of the premiums, and "on" must, to have any effect, mean either the instant of the non-payment of the premium, or after the policy expired. I am inclined to think that "on or before it shall expire" should be construed as referring to the time before and at the expiration of the policy, and not after the expiration. The policy provides that "in case the said Sallie W. Duerson shall not pay such premiums on or before the day hereinbefore mentioned for the payment thereof, * * * this policy shall cease and determine." No one, I think, would seriously contend that "on," in this sentence, means *after*, and there is no reason why the use of the word "expire," in the sentence under consideration, should make a change in the meaning of the word "on." It should receive the same construction in both sentences. By the non-payment of the premium due May 9, 1871, the policy ceased and determined, and courts of equity will not relieve from such forfeitures except for causes not shown in this bill, as they regard the time of the payment of premiums as of the essence of the contract. This policy for $10,000 may have ceased, and yet the right of complainants to another, for an amount proportionate to the premiums paid, may exist, and does exist unless the time of the surrender of the expired policy is of the essence of the contract. In other words, the policy may cease to be a binding contract by reason of the non-payment of the premiums, and yet the agreement, which, in this instance, is a separate one, may be a continuing and binding contract upon the company.

The complainants ask for a specific performance of this agreement, and defendant, by its learned counsel, insists that the agreement, as well as the policy, has ceased to be binding because of the delay. There is nothing in the language of this agreement which expressly declares a forfeiture of the right to a paid-up policy if the surrender of the old policy is not made on or before its expiration, nor is the time of the surrender made, in express terms, a condition precedent to the right to a paid-up policy. In the policy the defend-

ant provided that if "Sallie W. Duerson shall not pay said premiums on or before the day" they are due, the policy shall cease and be determined; but there is no such language, or of a like import, in the agreement. The five annual premiums paid for the current insurance on the life of Duerson, and also paid the premiums for the insurance for the remainder of his life for $5,000, and the only thing the assured failed to do was to surrender the old policy within the time indicated in the agreement. The mere surrender of the policy would not have increased or lessened the company's resources, nor would it have lessened its liabilities. That policy had, by its own terms, ceased to be a continuing and binding obligation, and its exchange and the surrender of the agreement for a paid-up policy for $5,000 would not have increased the assets of the company, as there were no premiums to be paid on it, nor would it have increased its liability. It would have been simply exchanging the company's obligation to deliver a paid-up policy for the policy itself.

Courts have refused to relieve parties from the effect of a forfeiture of a policy for the non-payment of the premiums, because promptness in their payment is held to be indispensable to the successful operation of insurance companies. Time is the essence of the contract. Hence companies secure prompt payment by clauses of forfeiture, and courts properly refuse to relieve against them, because to do so would impair if not destroy the company's means of paying its own obligations. It is true, if this court should decree a specific performance, notwithstanding the delay in this case, the defendant would lose the premiums which it has assumed to have forfeited because of the non-payment of accruing premiums. But, by the terms of its own contract, this right of forfeiture was subject to complainants' right to a paid-up policy, and defendant cannot complain of the enforcement of this right, unless, by that contract, the time of the surrender of the old policy was intended to be of the essence of the contract. A court of equity will not always relieve from a forfeiture, but it never favors one, and should not refuse relief so that a forfeiture may thereby be consummated. This record does not as yet indicate that the condition of the defendant has changed, so that it will be more difficult to perform this agreement and deliver a paid-up policy now than in May, 1871.

It is true, Duerson is dead, but this would have happened whether the company's obligation was to deliver a paid-up policy or its obligation was on the policy itself.

It may be true, as argued by the learned counsel for defendant,

that the complainants' right to a paid-up policy does not arise until at least three annual premiums are paid. These payments may be conditions precedent to the right of complainant to a paid-up policy, as may also be the surrender of the old policy; but does it follow that the *time* of the surrender is also a condition precedent to this right? The Kentucky court of appeals, in *Montgomery* v. *Phœnix Mut. Life Ins. Co.* 14 Bush, 54, in an exceedingly well considered and ably reasoned opinion, sustains complainants' view. That case is distinctly in point, and, although not of binding authority upon this court, is entitled to great respect and consideration, especially as this court is administering the law concurrently with the state courts.

There are many cases deciding the other way, but I have seen no case where the point under consideration has been so carefully considered and ably presented as in the *Montgomery Case.* That case is sustained by the supreme court of Maine in *Chase* v. *Phœnix Mut. Life Ins. Co.* 67 Me. 85; S. C. 7 Ins. Law J. 93. The reasoning of Judge LOWELL, in *Knickerbocker Life Ins. Co.* v. *Dietz,* 8 Ins. Law J. 544, tends, I think, in the same direction, although the decision itself is not in point. The *Montgomery Case* has not been modified or overruled by subsequent Kentucky cases. *Johnson* v. *South. Mut. Life Ins. Co.* 79 Ky. 403, follows it, but required the policy should be surrendered within a reasonable time.

In *Koehler* v. *Phœnix Mut. Life Ins. Co.* the superior court recognizes it as the law, and distinguishes that case from the *Montgomery Case.*

There is certainly quite an array of authority against the conclusion herein expressed, and further consideration and examination may change my view of the law, but at present I am of the opinion the demurrer should be overruled, and it is so ordered.