# Richmond

C. C. VAUGHAN & CO. v. VIRGINIA FIRE & MARINE INSURANCE
COMPANY.

MARCH 10, 1904.

Absent, Cardwell, J.

1. INSURANCE—*Fraud—Proof of Loss—False Invoices.*—It is the duty
   of an assured to use the utmost good faith in dealing with the
   insurer, and where a policy contains a provision which forfeits
   it for any false swearing or fraud, or attempt at fraud on part of
   the assured, before or after loss, or in proofs of loss, and after
   loss the assured furnishes and swears to duplicate invoices for
   goods alleged to have been destroyed, which invoices have been
   so changed as to make it appear that they were a part of the goods
   destroyed, when the evidence clearly shows that they were not,
   in the absence of evidence to remove the suspicion excited by such
   changes there can be no recovery, even upon demurrer to the ev-
   idence by the insurer, and although the goods actually destroyed
   may have exceeded in value the amount of the policy.

Error to a judgement rendered by the Circuit Court of Greens-
ville county, in an action of *assumpsit,* wherein the plaintiff in
error, C. C. Vaughan, trading as C. C. Vaughan & Co., was the
plaintiff, and the defendant in error was the defendant.

                                          *Affirmed.*

The opinion states the case.

*Davis & Davis,* for the plaintiff in error.

*Leake & Carter,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is the second time this case has been before this court. Upon the former writ of error, all questions of law involved in the case were settled, the verdict of the jury set aside because not sustained by the facts, and the cause remanded for a new trial. The proceedings had in the cause prior to that time are fully set out in the opinion of the court, and reported in 88 Va. 832 to 842.

After the case was remanded a new trial was had, in which there was a verdict for the plaintiff. That verdict was set aside by the Circuit Court, and a new trial granted. Upon the new trial precisely the same evidence was introduced by the parties as was before the jury upon the last preceding trial. To that evidence the defendant demurred, which demurrer was sustained by the court, and a judgment rendered in favor of the defendant. To that judgment this writ of error was awarded.

As stated by the plaintiff in error in his petition, the only question for our determination is, whether or not, under the rules applicable to a demurrer to evidence, it appears from the record that the plaintiff's claim has been forfeited under the provision of the policy that the company should not be liable thereunder for loss or damage, if there be "any false swearing or fraud, or attempt at fraud, before or after loss or damage by him (the assured) in support of his claim for loss, or in proofs of loss hereinafter mentioned."

One of the defendant company's defences was that Lassiter, the assured and the assignor of the plaintiff, was guilty of false swearing, and of an attempt at fraud in furnishing preliminary proofs of loss.

A day or two after the fire the adjuster of the company went to Franklin, Va., to adjust the loss. When he reached there,

he was informed by Lassiter that all his books and papers, except an inventory taken about a month before, were lost. Lassiter made a statement of his loss, and was then requested to furnish the company duplicate invoices for the bills which had been burned. This he agreed to do. Duplicate invoices were furnished aggregating the sum of $3,028.51, which were listed and afterwards sworn to by Lassiter. The evidence as to the circumstances under which, and by whom, the list was made out is conflicting, but on a demurrer to the evidence it must be treated as made out by the adjuster of the defendant company. It was forwarded to the solicitor of the company at Franklin, with the request that he get Lassiter to sign and swear to it and return it to the company. This was done. The certificate appended to the list which Lassiter signed, and to which he made oath, is as follows:

"I hereby certify that the duplicate invoices furnished as per above statement, amounting to three thousand and twenty-eight 51/100 dollars—said invoices being in the names of M. L. Beale & Co., D. Lassiter & Co., and D. Lassiter, all of which form a part of my loss—are correct, and were received by me at Franklin, Va., and constituted the goods burned on the morning of December 6, 1888."

Among the duplicate invoices furnished, listed, and sworn to are several bills for goods and items in other bills which the evidence conclusively shows did not constitute any part of the goods burned, but which had been so changed as to make it appear that they were a part thereof. One of these was a bill of goods sold to M. L. Beale August 13, 1888, for $328.50. It was changed so as to make it appear that it was sold to *M. L. Beale & Co.* on October 13, 1888. The members of the firm of M. L. Beale & Co. were M. L. Beale and D. Lassiter, and they did not go into business together until September 27, 1888. Their firm name was soon afterwards changed to D. Lassiter & Co., and on the 27th of October following, the policy of insur-

ance sued on was taken out in the name of D. Lassiter & Co. On the 12th of November Beale withdrew from the firm, and on the 5th of December he assigned his interest in the policy to Lassiter.    Beale, prior to and during the time he was in part-nership with Lassiter at Franklin, was doing business in Court-land on his own account.    The $328.50 worth of goods, as above stated, were sold to M. L. Beale on the 13th day of August, 1888, and shipped to him at Courtland.

Another of the invoices listed and sworn to was a bill for $171.39, for goods sold to D. Lassiter by Adelsdorf Bros. on the 18th day of September, 1888.    This bill was so changed as to make it appear that the goods were sold to D. Lassiter & Co. on the 28th of September, 1888.

Another of the charged invoices was a bill of $14.40 for goods sold by the Norfolk Bottling Company in October and Novem-ber, 1888.    The goods were sold and shipped to M. L. Beale, Courtland, Va., and the bill which was made out against *Mr. M. L. Beale* was changed to *Messrs. M. L. Beale & Co.*    It further appeared that the Norfolk Bottling Co. never had any account with M. L. Beale & Co.

Another of the invoices was for a bill of $134.93 for goods sold and shipped to M. L. Beale, Courtland, Va., on the 29th day of August, 1888, and which was so charged on the books of the seller, yet the bill was made out in the name of M. L. Beale & Co. by the bookkeeper at the request of some one—whom he does not remember—and the date changed after the bill was made out and delivered, from August 29, to October 21, 1888.

A business house in Petersburg had sold M. L. Beale & Co., on Oct. 3, 1888, a bill of goods of the value of $59.40.    Among the invoices listed and sworn to there is a bill of the same date for $304.06, for goods sold to that concern.    The evidence is clear that no such bill of goods was sold to that firm, or ever became a part of the stock of goods insured.

In another of the invoices, a small purchase made by Lassiter

on the 6th of September, 1888, the date is changed to Sept. 27th of that year, the day on which M. L. Beale & Co. commenced business.

It further appears that the day after the list of duplicate invoices was signed and sworn to by Lassiter, he assigned the policy of insurance for eleven hundred dollars, four hundred dollars less than its full amount.

Under these circumstances, as was said by this court upon the former writ of error, "it was undoubtedly incumbent upon the plaintiff to entitle him to recover, to remove the suspicion which the facts proved in connection with the invoices in question justly excite; for nothing is better settled than that the assured must observe, in dealing with the insurer, the utmost good faith, without which there can be no recovery. *Moore* v. *Va. Fire & Marine Ins. Co.,* 28 Gratt. 508, 523, 26 Am. Rep. 373. Because there was no such explanation offered on the first trial touching the false statements made under oath in furnishing the preliminary proofs of loss, the verdict of the jury was set aside and a new trial ordered.

An effort was made on the last trial to furnish such explanation by the examination of the solicitor of the company, who forwarded some or perhaps all of the duplicate invoices to the defendant company as they were furnished him by Lassiter, by showing that such invoices were not changed when he forwarded them to the company. But it is clear from the solicitor's evidence that he paid very little attention to those papers when they were handed him, and that he did not examine them with any such care as would enable him to say whether or not they were changed when he forwarded them to the company. Lassiter died before the last trial, but he was living at the date of the first trial, and did not testify or attempt to explain at that time why or how the false and fraudulent duplicate invoices were furnished to the company. It is argued that Lassiter was not guilty of fraud or an attempt at fraud in furnishing proofs

of his loss, because the goods destroyed, exclusive of the alleged fraudulent items, the proofs show were worth more than two thousand dollars, and that the plaintiff could in no case recover more than fifteen hundred dollars.    This contention was fully answered by Judge Lewis, speaking for the court upon the former writ of error, and need not be repeated, for as was said then, "however that may be, the undisputed facts are that he swore to a loss in excess of the actual loss, and furnished false vouchers, for which no explanation has been offered.    We must, therefore, infer that his sworn statements were known to him to be false, and, being upon a material matter, the law presumes that they were made with intent to deceive."

We are of opinion that the conclusion reached by the Circuit Court upon the demurrer to the evidence was plainly right, and its judgment should be affirmed.

*Affirmed.*