## Richmond

### HARTFORD FIRE INSURANCE COMPANY v. FARRIS.

November 12, 1914.

1. FIRE INSURANCE—*Policy—Iron Safe Clause—Warranty.*—The "iron-safe clause" in policies of fire insurance requiring inventories of stock to be taken and books to be kept are uniformly upheld as promissory warranties to be strictly performed to entitle the insured to recover for a loss.

2. FIRE INSURANCE—*Policy—Iron Safe Clause—Inventories—Books.* In the case of a store opening with an entirely new stock of goods on or about the date of the issuance of the policy, the invoices of the first lot of goods put into it, giving quantities thereof by items, with the cost price, if preserved and kept for production upon the demand of the insurer as and for an inventory would, perhaps, be considered a substantial compliance with so much of the policy as required the taking of an inventory, but does not meet the requirement of the policy that the insured shall keep such a set of books as will clearly and plainly present a complete record of the business he transacted.

3. FIRE INSURANCE—*Iron Safe Clause—Inventories—Invoices.*—Invoices are not inventories and the requirement for the taking of inventories must be substantially complied with.

4. FIRE INSURANCE—*Policy—Iron Safe Clause—Books.*—The set of books required to be kept and produced by the "iron safe clause" of a fire insurance policy must show all purchases, sales and shipments, both for cash and credit. It is a set of books that must be kept while the events they propose to cover are transpiring; the policy not providing for a set of books made from memory after the fire.

5. FIRE INSURANCE—*Policy—Iron Safe Clause—Substantial Compliance Necessary.*—The "iron safe clause" in a fire insurance policy is fair to both the insurer and the insured, and the insurer has the right to insist on a substantial compliance with it for the reason that the insured contracted to do so and that the conditions are reasonable, and if the insured were not re-

quired to keep and perform these conditions it would open
wide the door to the perpetration of frauds and the grossest
imposition upon insurers.

6. FIRE INSURANCE—*Iron Safe Clause—Compliance—Waiver.*—The
fact that the agent of the insurer went into the place of bus-
iness of the insured, seemed well pleased with the situation and
agreed to allow additional concurrent insurance, is entitled to
little, if any, probative force as bearing upon the question
whether or not there had been a substantial compliance on the
part of the insured with the conditions of the "iron safe
clause" of his policy, and if not whether the insurer had
waived the benefit of that clause in the policy.

Error to a judgment of the Circuit Court of Tazewell
county in an action of assumpsit.  Judgment for the
plaintiff.  Defendant assigns error.

*Reversed.*

The opinion states the case.

*Geo. W. St. Clair, H. H. Shelton,* and *Powell, Price &
Simmonds,* for the plaintiff in error.

*Sexton & Roberts* and *J. W. Hicks,* for the defendant
in error.

CARDWELL, J., delivered the opinion of the court.

The plaintiff in this action, Joseph Farris, an Assyrian,
for several years a resident of the town of Graham, Va.,
opened up a stock of merchandise and began business as
a merchant in that town on or about the 11th day of
August, 1911; his stock consisting of dry goods and no-
tions, ladies' and gentlemen's furnishings, underwear,
jewelry, etc.  On September 19, 1911, there was issued to
Farris by the Hartford Fire Insurance Co. a policy of in-
surance, covering his stock of merchandise, in the sum of
one thousand dollars, for a term of one year, the policy

containing the usual provisions found in this class of fire insurance policies, including what is generally spoken of and known as the "iron safe clause," which so far as material in this controversy is as follows:

"The following covenant and warranty is hereby made a part of this policy.

"1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, etc.

"2nd. The assured will keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments, both for cash and credit, from the date of inventory, as provided for in the first section of this clause, and during the continuance of this policy."

Farris continued his business as a merchant until January 20, 1912, when the building wherein his stock of goods was situate was destroyed by fire and none of the goods of Farris therein were saved. The insured, Farris, it appears, was away at the time of the fire, but returned the next morning to Graham and immediately notified the agent of the insurance company of his loss. After an investigation and attempt to adjust the insured's loss, the insurance company notified him that there was no liability upon the company under the policy he held and offered to return the premium of $37.00 paid thereon when the policy was issued, which Farris refused to accept; whereupon, this suit was instituted by Farris on the policy, and, at the trial thereof the defendant insurance company stated its grounds of defense, among them being the following:

"3rd. The plaintiff did not take, preserve or produce an inventory of the stock of goods, nor did he keep and preserve a set of books as provided for in the policy."

This is the only ground of defense that is necessary to be considered, as we view the case.

The defendant offered no evidence at the trial, but after the plaintiff had introduced his evidence demurred thereto, in which demurrer the plaintiff joined. Whereupon, the jury assessed the plaintiff's damages at $1,000, the full amount of the policy, and the court overruled the demurrer to the evidence and entered its judgment in favor of the plaintiff for the amount of damages ascertained by the jury's verdict, to which judgment this writ of error was awarded the defendant.

Following the provisions in the policy sued on, quoted above, are further provisions which required the insured to produce the books, inventory, etc., stipulated for in his contract with the insurer, evidenced by his policy, but at the trial of this cause in the court below the plaintiff made no pretense that he had complied with the "iron safe clause" of the policy or made any effort to do so, or offered any excuse for not complying with it. On cross-examination as a witness in his own behalf he was asked: "You spoke in your examination in chief of having kept books showing your cash and credit sales. You had an inventory did you? A. No, sir, I had no inventory at all." His counsel in the argument before this court, while not taking issue with the contention of counsel for the defendant as to what an inventory is or should be, urges the view that "under the clauses of the policy, the plaintiff had one year's time from the date of the issue of the policy in which to take his inventory." In other words, this contention is that as one year's time from the date of issuance of the policy had not expired when the loss occurred, plaintiff was in no default in not having

taken an inventory of his stock of goods as required by the terms of his policy.

The requirement of the contract between the parties was that the insured "shall take a complete inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, etc."

"In order to expedite the proof of loss and to verify the honesty of the claim of loss, provisions are customarily inserted in policies upon stocks in trade requiring the insured to take an inventory at frequent intervals, to keep regular books, and to reserve all papers in an iron or fire-proof safe. These provisions are uniformly upheld as promissory warranties to be strictly performed to entitle the insured to recover for a loss." 19 Cyc. 761.

The same authority, at p. 762, states the rule of construction to be that where the policy fixes the period of time within which the insured is to take an inventory, he has the period mentioned in which to perform this condition contained in the policy. "The inventory intended by the policy is a 'detailed and itemized enumeration of the articles composing the stock with the value of each.' Consequently, an invoice of goods purchased is not a compliance with the condition requiring an inventory, nor is a mere summary of the condition of the goods sufficient."

The policy sued on here provides that if an inventory has not been taken within twelve months prior to the date of the policy, one must be taken within thirty days of the issuance of the policy, and this court in considering this same provision in an insurance policy in *Homestead Ins. Co.* v. *Ison*, 110 Va. 18, 65 S. E. 463, made it

plain that the inventory must be made within thirty days of the policy, there having been no inventory of the stock of goods taken by the insured within twelve months prior to the date of the policy.

It has been repeatedly said by this court, and by the courts in other jurisdictions, that the inventory is fair to both the insurer and the insured, and that the insurance company has the right to insist on a compliance with this provision of the policy, or at least a substantial compliance therewith. The inventory is the foundation of the system of bookkeeping required by the policy contract. "The bookkeeping had to begin only from the date of the inventory which was required to be taken . . ." *Homestead Ins. Co.* v. *Ison, supra.*

It is seriously contended for the plaintiff in this case that by reason of the fact that he started business on August 11, 1911, taking out the policy of insurance he sues on September 19, 1911, and the fire, totally destroying his stock of goods which were thus insured, occurred on the morning of January 20, 1912, just four months after his policy was issued, and he had furnished the insurance company certain books kept by him, also duplicate bills of purchases he had made, which had been examined by the insurance company's agents, who had three times personally examined him (the insured), he had substantially complied with the provisions of the "iron safe clause" in his policy.

This contention is without merit. It is perhaps true that in the case of a store opening with an entirely new stock of goods on or about the date of the issuance of the policy, the invoices of the first lot of goods put into it, giving quantities thereof by items, with the cost price, if preserved and kept for production upon the demand of the insurer as and for an inventory, would constitute such a list, and the insured would be considered as hav-

ing substantially complied with so much of the policy as required the taking of an inventory; but that, as is readily to be observed from the facts above stated, is not this case. The plaintiff was not only under contract obligation to the defendant to take, preserve and produce a complete inventory, but such a set of books as would clearly and plainly present a complete record of the business he transacted, and was also to produce, when required, all of the invoices and other vouchers showing the articles he purchased and the prices paid or to be paid for same. He did not pretend to keep a set of books, such as are contemplated and stipulated for in his policy contract, but after the fire that destroyed his stock of goods, he produced certain statements which he claimed were invoices and served as an explanation and verifica- tion of the books he had, in view of the fact that he had just opened up and begun his business within less than forty-five days prior to the issuing and delivery of his policy; and, furthermore, that these invoices of his purchases were entitled to the force and effect of an inventory.

Not only are the authorities uniform in holding that "invoices" cannot be substituted for "inventories," but the statements which the plaintiff in this case called invoices and filed as evidence over the objection of the defendant are in fact mere statements showing nothing but dates and figures, and were put into the case, as it would seem, without any sort of order, some of them in Hebrew or Syrian language, besides being in such a confused state that neither the jury nor anyone else could have understood their meaning. Most of them do not show to whom the goods were billed, but merely the name of the consignor and the amount of the bill, and in a number of others the goods do not even appear to have been sold to the plaintiff, Joseph Farris, but to H. Farris & Bro.

Gus, Farris, or to Graham Bargain House.  The invoices which show, with reasonable clearness, that the sale of the goods was to the plaintiff in several instances, and the amount of the purchases, do not tell the kind or character or quantity of the goods—in fact, give no idea as to what was the character of the goods.

The set of books required to be kept and produced by the "iron safe clause" of a fire insurance policy must show "all purchases, sales and shipments, both for cash and credit.  It is a set of books that must be kept while the events they propose to cover are transpiring, the policy not providing for a set of books made from memory after the fire." *Phoenix Ins. Co.* v. *Sherman,* 110 Va. 435, 66 S. E. 81.

In that case the opinion cites with approval *Pellican Ins. Co.* v. *Wilkerson,* 53 Ark. 353, 13 S. W. 1103, for the proposition that "if the books do not show data necessary to enable the insurers to test the accuracy of the accounts delivered to them, or afford satisfactory idea of the amount of goods on hand and destroyed by fire, the insured cannot recover."

The opinion of this court in *Vaughan* v. *Va. F. & M. Ins. Co.,* 102 Va. 541, 46 S. E. 692, says: "For nothing is better settled than that the assured must observe in dealing with the insurer, the utmost good faith, without which there can be no recovery."

The "iron safe clause" has been over and over again dealt with and approved in the decisions of this court as fair both to the insurer and the insured, and it has been held that the former has the right to insist on a compliance with this provision of the policy, for the reason that the insured contracted to do so, and that the conditions are reasonable and if the assured were not required to keep and perform these conditions it would open wide the door for the perpetration of frauds and the grossest im-

position upon insurers." *Phoenix Ins. Co. v. Sherman, supra; Houff v. Ins. Co.,* 110 Va. 585, 66 S. E. 831.

While the "iron safe clause" of an insurance policy, requiring the keeping and production by the insured of a set of books providing a means for ascertaining with reasonable certainty, in case of loss, what goods were lost, requires only a reasonable compliance with the terms of the contract, the insured must show a substantial compliance with the terms of his contract in order to entitle him to recover. *Scottish U. & Natl. Ins. Co. v. Va. Shirt Co.,* 113 Va. 353, 74 S. E. 228.

The fact that the agent of the insurer had gone into the insured's place of business, seemed well pleased with the situation and agreed to allow additional concurrent insurance, is entitled to little if any probative force as bearing upon the question, whether or not there had been a substantial compliance on the part of the insured with the conditions of the "iron safe clause" of his policy, and if not whether the insurer had waived the benefit of that clause in the policy.

We have not undertaken to review the evidence in detail for the reason that to do so would serve no other purpose than uselessly to prolong this opinion. The plaintiff admits that he "had no inventory at all," nor did he comply with the terms of the "iron safe clause" of his policy with respect to the set of books he agreed to keep, but relies solely upon certain statements produced by him after his loss, together with attempted explanations thereof, from which it was a matter of impossibility to form an intelligent conclusion as to what business he had transacted or what stock of goods was in the store and destroyed by the fire.

From an examination of the whole evidence it is clear that the jury would not have been warranted in finding that there had been even a substantial compli-

ance on the part of the plaintiff with the terms of his policy, either with respect to the inventory of the stock of goods required or the set of books stipulated for, showing a complete record of the business transacted by him; therefore, we are of opinion that the judgment of the circuit court complained of should be reversed, the demurrer to the evidence sustained, and judgment entered here for the defendant.

*Reversed.*