# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### THE CONTINENTAL INSURANCE COMPANY v. L. D. PEED.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*Alex. H. Sands* and *R. O. Norris,* for the plaintiff in error.

*W. W. Butzner* and *W. T. Mayo,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review proceedings in the trial of an action instituted by L. D. Peed against The Continental Insurance Company to recover $1,500 on a fire insurance policy for the loss of a stock of merchandise. The trial resulted in a verdict and judgment for plaintiff. For convenience, the parties will be designated as they appeared before the court below.

There are only two assignments of error. The first is to the action of the court in refusing to set aside the verdict on the ground that it was contrary to the law and the evidence, and refusing to enter judgment for defendant.

Defendant contends that there was a breach of the provision of the policy known as the iron safe clause, which reads thus:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium shall be returned.

"2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments,

both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"3. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the premises mentioned in this policy are not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the property hereby insured.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

Defendant's contention is based upon the fact that after the fire plaintiff failed to produce the required books and inventories.

The undisputed evidence established that the inventories and books required by the provisions of the policy were kept, and for safekeeping were placed in a fire-proof safe. In addition to these papers, plaintiff kept in this safe notes and accounts due him, and, as postmaster, kept the post office papers, money and stamps therein. The safe was in a country store, consisting of a two story wooden building, 36x48 feet, with a 12x12 foot addition, used for storage, where kerosene oil and other things were kept. During the fire, the safe fell through the floor to the ground, where it was seen with its door partly open and its contents burning.

Plaintiff left the store about two-thirty, p. m., the day preceding the fire, and spent the night at Colonial Beach, about eighteen miles away, and returned home between six and seven o'clock the next morning, after the fire had completely destroyed the property.

His son, Donald Peed, was in charge of the store. This young man testified that he closed the store about eight, p. m., placed the daily record of sales and purchases, along with a box in which he kept stamps and small change, in the safe and locked it before he went to his home, some

seventy-five yards from the store. As he was leaving, his uncle, Walter Henson, asked him if he had locked the safe and he replied in the affirmative. About nine o'clock, or nine-thirty, he was called to the store by a man who wanted to buy a wagon skein. He sold the skein and was paid two dollars for it. He went to the safe, not remembering that it was locked, to put the money in it, and, finding it locked, decided that rather than work the combination he would put the money in the cash drawer, which he did. He again closed the store, returned home and went to bed. In this testimony, he is substantially corroborated by Walter Henson.

Henson testified that on July 28, 1933, about two-thirty, a. m., he was aroused from sleep and saw the store on fire; he called Donald Peed and sent him to a neighbor's house for help. When he reached the store the fire had gained such headway that it was impossible to save anything except a few articles that were on the front porch.

To overcome this testimony, which was not contradicted, defendant introduced one E. D. Barnes, who qualified as a safe and lock expert. Barnes testified that on the morning of the trial he examined the safe and its lock; that he did not observe any warping or physical marks on it; that on removing the plate, he found the bolts and dial in an unlocked position, the former protruding about three-quarters of an inch; that if the combination had been locked and the bolts in place it would have been impossible for the heat to have blown the door open, and in his opinion the safe was unlocked at the time of the fire. He said he had heard of people opening safes of which they did not know the combination, but, in his opinion, it could not be done; that he had opened safes he had never seen before, but that was because he knew the factory combination, a yeggman who knew the factory combination could do the same; and there were experts who "the minute they put their eyes on a safe could turn the combination."

On motion of defendant, the jury were taken to view the safe where it had fallen with the door partly open and so

remained from the date of the fire to the date of trial. Defendant contends that the opinion of Mr. Barnes, based upon the condition of the safe after the fire, *i. e.*, with the door partly open and its contents destroyed, is conclusive proof of the breach of the iron safe clause heretofore quoted.

With this contention, we cannot agree. The rule generally applied is expressed in *Liverpool & London & Globe Ins. Co.* v. *Kearney and Wyse,* 180 U. S. 132, 21 S. Ct. 326, 328, 45 L. Ed. 460, thus:

"We are of opinion that the failure to produce the books and inventory referred to in the policy means the failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence or design of the insured. Under any other interpretation of the policies, the insured could not recover if the books and inventory had been stolen, or if they had been destroyed in some other manner than by fire, although they had been placed 'in some secure place not exposed to a fire' that would reach the store. If the plaintiffs had the right, under the terms of the policy, as undoubtedly they had, to remove their books and inventory from the safe to some secure place not exposed to a fire which might destroy the building in which they carried on business, surely it was never contemplated that they should lose the benefit of the policies if, in so removing their books and inventory, they were lost or destroyed, they using such care on the occasion as a prudent man acting in good faith would exercise. A literal interpretation of the contracts of insurance might sustain a contrary view, but the law does not require such an interpretation. In so holding the court does not make for the parties a contract which they did not make for themselves. It only interprets the contract so as to do no violence to the words used, and yet to meet the ends of justice."

The testimony hereinbefore summarized raised one issue to be settled by the jury, *i. e.*, whether the loss of the books and papers was due to the negligence of Donald Peed, the agent of plaintiff in charge of the store. If the jury believed his positive statements, as they had a right to do,

he was not guilty of negligence. The fact that several hours after he had locked the safe the store was seen in a light blaze and the door of the safe partly open, is not sufficient as a matter of law to prove that the young man did not lock it. That is a possible inference, but not the only one. It is possible that a yeggman gained entrance to the store, robbed the safe, and set fire to the building. Either conclusion is a mere guess.

We do not think that under the terms of the policy, the assured, in order to recover, is required to prove how the fire originated or how the safe door was opened. A literal construction of this paragraph of the policy would defeat recovery in any action in which the assured failed to produce the books and papers, but as said in the case hereinbefore cited, "the law does not require such an interpretation." It was not contemplated by the parties at the time the insurance policy was issued that the assured should maintain a guard to watch the safe and protect the books and papers from all hazards. See 14 R. C. L., pages 1139-40; 29 C. J. 255.

The jury accepted the testimony of Donald Peed to the effect that he placed the books and papers in the safe and locked it. The physical facts do not necessarily prove that he was mistaken in this positive statement.

The other assignment of error is to the action of the court in refusing to give instructions 1, 2 and 3 offered by defendant. These instructions are in conflict with the views hereinbefore expressed and we find no error in the refusal of the court to give them.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

HOLT, J., dissenting.

L. D. Peed was a country merchant with a small store in Westmoreland county. His business had been insured but that insurance had expired. It was re-insured on June 8,

1933, in the sum of $1,500 and was burned on July 27 following.

It does not appear to have been a prosperous venture. When this policy was taken out he stated to the insurance agent that he was unable to pay for it at that time, but would pay when he had threshed his wheat in the coming summer. Four judgments stood against him amounting to $967 and interest unstated. All of them bore date in that year and appear to have been for obligations incurred by him as a merchant.

He usually slept in his storeroom, but on the afternoon of July 27th he drove into the county on business and spent the night at Colonial Beach, eighteen miles away, returning next morning and after the fire. On this occasion he left his young son in charge of the store. This son said that he closed the door and locked the safe in the early part of the night. After the fire the safe was found open and its contents were burned or missing.

The evidence is that there was nothing to show that it had been tampered with and the uncontradicted testimony is to the effect that the lock was in an unlocked position, the bolts were in an unlocked position and that this would have been an utter impossibility if the safe had been closed and locked as testified to for the plaintiff.

In the policy of insurance is this provision: "The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the premises mentioned in this policy are not actually open for business."

We need not go afield for the construction of this provision. In *Hartford Fire Ins. Co.* v. *Farris,* 116 Va. 880, 83 S. E. 377, 379, the court said: "The 'iron safe clause' has been over and over again dealt with and approved in the decisions of this court as fair both to the insurer and the insured, and it has been held that the former has the right to insist on a compliance with this provision of the policy, for the reason that the insured contracted to do so, and that the conditions are reasonable and if the assured were not

required to keep and perform these conditions it would open wide the door for the perpetration of frauds and the grossest imposition upon insurers."

This fair statement of contract rights and liabilities we have many times affirmed.

It is certain that the safe was not locked when the store was burned and that it was in a building entirely under plaintiff's control.

Like every other contract provision this under review must be reasonably construed. No one would for a moment claim that the policy was forfeited because some marauder rifled the safe, looted the store and burned the building to hide his crime. That the store was not looted the plaintiff indirectly claims for he has sued for the full amount of his policy. Physical facts establish beyond cavil that the safe had not been tampered with. If it had been bolted it could not have been opened by fire. It was done by somebody, and deliberately, who knew the combination. A plausible explanation should be forthcoming. None is offered, and for this reason I am of the opinion that the plaintiff has not borne the burden which the law puts upon him.