# CHARLESTON.

Galloway *v.* Standard Fire Insurance Co.

Submitted June 2, 1898—Decided November 19, 1898.

1. Insurance—*Policy—Contracts—Locus Contractus.*
   Where application is sent by an applicant or his agent from one state to an insurance company of another, and there accepted, and a policy of insurance is there issued, it is a contract of the of the state where issued.   (p. 239).

2. Contracts—*Locus Contractus—Acceptance.*
   Generally, the place of the acceptance of a  proposal is the place of contract.   (p. 240).

3. Contracts—*Delivery—Postoffice.*
   A deposit of a contract in a post office addressed to the party to whom it is to be delivered is a delivery at the post office.   (p. 240).

4. Payment—*Debtor—Creditor.*
   A debtor must seek his creditor to pay him, unless the creditor be out of the State.   (p. 241).

5. Insurance—*Policy—Contracts—Locus Contractus.*
   If a policy of insurance provides  that it shall not be valid until countersigned by its  agent at a  certain place, it is a contract of the state where so countersigned.   (p. 240).

6. Insurance—*Policy—Limitation of Action—Waiver—Estoppel.*
   Where a policy of insurance provides  that suit must be brought upon it within six months after loss by fire, and there is a promise by  the company, within the six months, to pay the policy, and the whole period runs out before the company refuses to pay, such  promise is a  waiver of the limitation, and  estops the company from pleading it, and  is not a  mere suspension of time from the promise until the refusal to pay.   (p. 242).

. Error to Circuit Court, Ohio County.

Action by C. F. Galloway against the Standard Fire Insurance Company. Judgment for defendant, and plaintiff brings error.

*Reversed.*

WHITE & ALLEN, for plaintiff in error.

W. P. HUBBARD, for defendant in error.

BRANNON, PRESIDENT:

This is an action by Galloway against the Standard Fire Insurance Company to recover for a loss by fire of a stock of goods insured by a policy issued by the company, resulting in a finding by the court trying the case in lieu of a jury in favor of defendant, and judgement for it. The plaintiff sued out a writ of error. The policy contained a clause that no suit upon it should be sustained unless commenced within six months after the fire, and the company pleaded this contractual limitation in bar of the action and the plaintiff tendered three replications, which were rejected. The case turns upon whether the circuit court was right in the rejection of those replications. Only two of them need be considered, Nos. 2 and 4.

Replication No 2 seeks to meet the plea of limitation by stating that the policy was made in the state of Virginia; that it was countersigned at Wheeling, W. Va., but not then completed by delivery, but was later delivered to Rice, an insurance broker of Richmond, Va., and by him delivered to Hutton, an insurance agent at Warrenton, Va., and was by him delivered to Galloway at Warrenton, and that it thus was a completed Virginia contract for insurance of property situated in Virginia, and to be performed in Virginia; and that the company was not a corporation created by Virginia; and that certain statutes of Virginia, specified, prohibited foreign corporations from doing business there without complying with certain regulations, one being the appointment of an agent upon whom process might be served, and that this the defendant had not done; and that, because there was no such agent, the plaintiff was prevented from suing within the six months. This replication would maintain that, the policy being a

contract made in Virginia, its statute law requiring the appointment of such agent became a part of the contract, as if inserted therein,—just as much a part of the policy as if it had in words said that the six months limitation should apply only "in case the company shall appoint, as required by the law of Virginia, an agent to accept service therein of process in actions against it." This raises the question whether the policy is a Virginia or West Virginia contract, for, if not a Virginia contract, very plainly the Virginia statute cannot be an element in it. I think, for several reasons, it is a West Virginia contract. May, Ins. § 66, says: "It follows, from the rule that the contract is completed when the proposal of the one party has been accepted by the other, that the place of contract is the place of acceptance. If an agent, resident in one state, of an insurance company, resident in another, forwards the requisite papers to the home office, and a policy is issued, and mailed directly to the applicant, the contract is a contract made in the state where the home office is situated; and, since the acceptance is the term of completion, it would seem that a transmission of the policy by mail to the agent, to be delivered by him to the applicant, would have the like effect." See 2 Pars. Cont., 582. And 3 Am. & Eng. Enc. Law, 551, says that the general rule is "the place of the contract of insurance is the place where it was accepted." Tested by this law, when the proposal, if forwarded by an agent of the company, resident in Virginia, was accepted at the home office, and a policy issued and mailed to the agent in Virginia, to be delivered by him to the applicant, it would be a West Virginia contract, because the acceptance was there; but, to make this stronger, we may eliminate the consideration that the policy was sent to a Virginia agent of the company, to be delivered in Virginia to the insured party, as this replication does not aver that Rice or Hutton was agent of said company, and the policy has a clause declaring him not an agent of the company, and the policy is a part of the declaration; and thus we have simply the case of some one as plaintiff's agent sending to the Wheeling home office an application, and its acceptance there, and the issuance there of a policy, and its delivery to the applicant's agent

in Richmond, which, under above law, makes it a West Virginia contract. The place of acceptance, not delivery, decides where the contract is made, as a general rule. And, if delivery were important, a delivery to the mail, addressed to the applicant or his agent, would be the final delivery. 2 Pars. Cont., 582; *Hartford Steam-Boiler Inspection & Insurance Co.*, v. *Lasher Stocking Co.*, (Vt.) 29 Atl., 629; 4 Am. & Eng. Enc. Law (2d Ed.) 202, note 1. Nothing more remained to be done to complete the contract. By delivery to the mail, the company, in effect, delivered it to a third party to be delivered to the insured, and lost control over it. An excellent discussion of this subject is that by Justice Clifford. *Desmazes* v. *Insurance Co.*, (U. S. Cir. Ct., Mass.) 7 Fed. Cas., 529. That it was completely signed and countersigned by the officers at Wheeling is recited in the policy. So it is, under the facts and law, a West Virginia contract. But, to make this plainer, it declares that it should "not be valid until countersigned by the duly-authorized agent of the company at Wheeling, W. Va." It shows that it was countersigned there. It then was completed and took effect. Judge Anderson, in *Insurance Co.* v. *Warwick*, 20 Grat., 628, says this shows it to be a contract where countersigned. The place of the performance of the final act, which is to give effect to the contract by its own word, is conclusive to show where the contract was made. A policy of insurance declared that the contract "shall not take effect until the first premium shall have been paid." It was held to be a Missouri contract, though signed by the company in New York, because the payment of premium was in Missouri. *Assurance Co.* v. *Clements*, 140 U. S., 226, (11 Sup. Ct. 822.) A policy issued by a company in New York, and there signed, but not to be valid until countersigned by an agent in Massachusetts, was held a Massachusetts contract. *Heebner* v. *Insurance Co.*, 10 Gray, 131. Same doctrine, 3 Am. & Eng. Enc. Law, (1st Ed.) 551. These principles are fully stated in *Ford* v. *Insurance Co.*, 99 Am. Dec., 663, 668. But if it were a Virginia policy, what then? The law requiring an agent's appointment would not be a part of it, because it is a law unto itself, prescribing its own limitation, and contains no exception based on failure to

appoint an agent. It is settled that where a contract fixes a shorter limitation than that of the general law, the exceptions in the general statute of limitations do not apply, because the rights of the parties are tested by the contract; and, as it relieves them from the general law, it relieves from its exceptions. *Wilkinson* v. *Insurance Co.*, 72 N. Y., 499; *McElroy* v. *Insurance Co.*, 48 Kan., 200, (29 Pac., 478); *Riddlesbarger* v. *Insurance Co.*, 7 Wall. 386; 2. May, Ins. § 483. And again, if a Virginia contract, and the statute a part of it, it seems to me that the statute could only apply to a suit in Virginia. What has it to do with a suit in West Virginia? If the policy had in words said that suit should be within six months, "unless the company fail to appoint an agent in Virginia," how could it affect a suit here? So I conclude that the Virginia statute has no relation to this suit, and replication 2, setting it up as an excuse for not sooner suing, sets up immaterial, irrelevant matter, and is no answer to the plea of contract limitation. The facts which it states make the policy a West Virginia policy, and exclude the introduction of the Virginia statute. As suit could be brought in West Virginia, what excuse is there for not suing here? If, however, we could say that replication shows a Virginia contract, it would be bad, because the declaration files the policy, which shows itself on its face to be a West Virginia contract, and the replication showing a Virginia contract would be in conflict with the declaration, and be a departure in pleading, and bad under the law of pleading forbidding departure. 6 Enc. Pl. & Prac., 460.

The policy does not say payment of loss was to be at any particular place. Therefore, it is to be where the policy issued. 3 Am. & Eng. Enc. Law, 446; 2 Pars. Cont., 583. It is urged that the debtor must seek and pay his creditor, and, as the insured party lived in Virginia, therefore it is a Virginia contract. I think this Court has in some opinion held that the duty of a debtor to seek his creditor to pay him does not call the debtor to go out of the State, and I find the law so stated in *King* v. *Finch*, 60 Ind., 423, and in *Littell* v. *Nichols' Adm'r*, Hardin, 66. But this does not seem to test the question of the place of the making of the contract. If a contract be made be-

tween parties, and the creditor should move to Maryland afterwards, would that make it a Maryland contract?

Replication 4: It states that the goods insured by the policy sued upon were also insured in the Wytheville Insurance & Banking Company and the Petersburg Saving & Insurance Company, and that, after the fire, agents of the three companies met, and sought to compromise the claims of plaintiff, and made an offer, which plaintiff rejected; and that afterwards, before the expiration of the six months, the defendant company promised him to pay him the full sum stipulated in the policy without suit, in case the Petersburg Company would pay him the full amount of its policy, on which promise he relied; and that the Petersburg Company did pay him the amount of its policy, but the defendant refused to pay the amount of its policy, and did not, until long after the expiration of said six months named in its policy as a contract limitation, refuse to pay or decline to do so, and did not notify him of any purpose not to pay. The circuit court rejected this replication, because it failed to show the date when the promise to pay ceased; that is, when the company notified plaintiff that it would not pay. This replication, as counsel for the company concedes, alleges that during the whole of the six months the company was promising to pay, and did not refuse to do so until after that period, and then did refuse. Then the position of the circuit court is not that the date of the refusal to pay must be given, so we may see if a part of the six months remained which would afford a reasonable time for suit before its expiration, as held in *Steel* v. *Insurance Co.*, 47 Fed., 863. But even if the whole six months had gone before a refusal to pay, the promise to pay would be no waiver of the limitation, but suit might be, and must be, brought within six months after refusal to pay, not later, and that the date of refusal should appear if suit was in six months thereafter, This depends upon whether the promise of payment is a waiver of the clause of limitation, eliminating it thereafter from the policy, and estopping the company from pleading it, or merely operates to suspend the running of time under it, so long as the promise lasts until refusal to comply with it. Now, whether such promise continuing unexecuted for a time,

and then ended by a refusal to perform it, leaving a part of the period reasonably sufficient for suit, would be a waiver of the clause, or merely suspend it from the promise to the refusal to fulfill it, I need not—do not—say. I do say, however, that where such promise stands for the whole period of the limitation, it is not a mere suspension, but a waiver of the clause of limitation. The mere pendency of negotiations for settlement is no waiver. *McFarland* v. *Iusurance Co.*, 6 W. Va., 425. But a promise to pay ends controversy, and by it the company says: "You need not sue at all. I will pay without suit." It admits of no other interpretation. *Thompson* v. *Insurance Co.*, 136 U. S., 287, (10 Sup. Ct. 1019,) held that a promise to pay was a waiver, and barred the company from this defense. The court went further, saying that conduct of the company inspiring a hope and expectation on the part of the insured party that the loss would be amicably adjusted would operate as such waiver and estoppel. The court held it an estoppel against the plea, not a mere suspension. It said delay to sue would, in such case, be attributable to the company. It said the waiver need not be in writing. Assurances of settlement, which reasonably throw the insured party off his guard, and lull him into security, will waive the limitation clause, and bar its use by the insurance company. *Insurance Co.* v. *Peck*, 133 Ill., 220, (24 N. E. 538); *Bonnert* v. *Insurance Co.*, 129 Pa. St., 558, (18 Atl. 552); *Insurance Co.* v. *McGregor*, 63 Tex., 399; *Bish* v. *Insurance Co.*, 69 Iowa, 184, (28 N. W. 553); *Martin* v. *Insurance Co.*, 44 N. J. Law, 485; 2 May Ins. § 488; *Banking Co.* v. *Myer*, 93 Ill., 271, holds a promise to pay a waiver. We must remember that this clause is for the benefit of the company, inserted by it to limit the period for suit shorter than the general law, and it would be unjust to allow it by its action to cause delay in suit, and then plead this clause. Being for its benefit, it may waive it. In determining whether such promise of payment is a waiver or a mere suspension of running of time, we must reflect that the limitation clause is only a matter of contract, not like the statute of limitations. It either operates or is entirely gone by reason of waiver. The statutory limitation fixes a period as a bar, and then says

that when there is obstruction to the prosecution of the suit by absence or other cause the time of the obstruction does not count.    The running of time stops for a time and then begins again,—opens and expands,—because the statue says so; but not so with the contractual limitation. *Semmes* v. *Insur..nce Co.*, 13 Wall., 158.    But cases cited above treat the promise as a waiver of the clause, not a mere suspension.

After finishing this opinion, I meet with the case of *Insurance Co.* v. *Baker*, 153 Ill., 240, (38 N. E. 627), meeting the point squarely, holding that "hopes of payment held out to a plaintiff by an insurance company as an inducement not to sue within the time limited in the policy operate as a waiver of the limitation clause," and that, "when once so waived, the clause will not, after any substantial part of the time is lost, be revived by a statement to the insured that the company is insolvent, and he can make nothing by suit," and that "after such waiver the case rests upon the regular statutory limitation." Of couse, if a lapse of part of the six months would be a waiver, all of it would.    The leaning of the opinion is that it is a waiver regardless of time.

It is proper that I should allude to cases cited in the circuit court's opinion to sustain the contention that such promise only a suspension of time. *Black* v. *Insurance Co.*, 31 Wis,. 74, seems to hold it a suspension.    *Steel* v. *Insurance Co.*, 47 Fed., 863, was where there were assurances of settlement for a time, but then repudiated, and seven months remained before the end of the period for suit, which the court held a reasonable time for suit.    It admitted that, if all the time had gone, it would prevent the company from pleading the limitation.    *Barnum* v. *Insurance Co.*, 97 N. Y., 188, not in point.    There were proofs of loss, then negotiations as to amended proofs, and under all the cases the contract limitation could not start till proof or loss of time thereafter given for payment, and the court held that cause of action did not accrue until close of negotiations for amended proofs.    It did not hold that promise of payment, after accrual of action, and within the period, would be a mere suspension.    *Insurance Co.* v. *Fish*, 71 Ill., 621, does not decide this point.    It decides

that, pending negotiations, suit need not be brought; thus sustaining the proposition that conduct indicating adjustment will be a waiver, rather than holding it a mere suspension. It cites *Insurance Co.* v. *Chestnut*, 50 Ill., 116, which holds that an adjustment and promise to pay would waive the limitation clause,—an authority to sustain me. And it cites a case in 25 Ill., 466 (*Insurance Co.* v. *Whitehill*), holding the same. So the 71 Ill., case is no authority on the point, and, if it were, is overborne by older and later Illinois decisions.

By reason of the rejection of replication 4, we reverse and remand for further proceedings.

*Reverse.*