Richmond.

PHOENIX INSURANCE CO. v. SHERMAN.

November 18, 1909.

Absent, Buchanan, J.

1. FIRE INSURANCE—*Inventory—Lump Sums—Gross Items.*—An inventory is an itemized list or enumeration of property, article by article. A mere statement of articles, put down in lump sums, or entire bills put down at a gross sum, with no statement of the several articles named, or of the quality or cost price is not an inventory within the meaning of the "iron safe clause" of fire insurance policies.

2. FIRE INSURANCE—*Iron Safe Clause—Object Of.*—The "iron safe clause" found in all policies of insurance on shifting stocks of merchandise requires the insured to take certain inventories and to keep certain books. There is nothing unreasonable in its requirements. Under it the insurer has the right to such a compliance with its terms as will fairly and intelligently inform him during the life of the policy as to the stock carried by the assured, and, in case of fire, as to the stock burned and the fair cash value thereof; and it is no hardship upon the assured to comply with this requirement of his policy.

3. FIRE INSURANCE—*Iron Safe Clause—Character of Books Required.* A substantial compliance with the requirements of a fire insurance policy, including the "iron safe clause" is all that is necessary. Books need not show articles sold if they show the amounts for which they are sold, nor the prices if the articles are shown; nor is it necessary to show whether they were sold for cash or on credit. But if a large business in conducted, and sales made both for cash and on credit, and these are commingled, without any distinguishing mark or token, it is inconceivable that "a complete record of the business transacted" can be kept. The books should be such as will enable the insurer to ascertain with substantial certainty and definiteness the value of the goods destroyed by fire, otherwise they do not comply with the "iron safe clause."

4. FIRE INSURANCE—*Iron Safe Clause—Inventory—Books—Case at Bar.*
   If an inventory taken prior to the date of an insurance policy is
   relied upon as a compliance with the "iron safe clause," then
   the assured must also keep a set of books *from the date of the
   inventory,* and during the continuance of the policy, showing a
   complete record of the business transacted in order to comply
   with the terms of that clause. In the case at bar, the book
   offered in evidence does not comply with this requirement, and,
   in fact, is just such a book as might have been written up at
   one time after the fire.

Error to a judgment of the Circuit Court of Wise county in
an action of *assumpsit.* Judgment for the plaintiff. Defend-
ant assigns error.

*Reversed.*

The opinion states the case.

*Phlegar & Powell* and *Irvine & Morison,* for the plaintiff in
error.

*Bullitt & Chalkley* and *W. S. Mathews,* for the defendant in
error.

CARDWELL, J., delivered the opinion of the court.

The defendant in error brought this action in the Circuit
Court of Wise county against plaintiff in error to recover the
amount of an insurance policy upon a stock of general mer-
chandise in his store.

Upon the trial of the cause, and after the evidence had all
gone to the jury, the defendant demurred thereto, in which de-
murrer the plaintiff joined, and the court, after taking time to
consider as to its judgment, overruled the demurrer to the evi-
dence and entered judgment for the plaintiff for the full amount
of the policy, $2,000, ascertained as the damages by the verdict
of the jury subject to the ruling of the court upon the demurrer
to the evidence.

The policy in question was written and took effect May 12,

1907, to expire on the 12th day of May, 1908, and the fire occurred December 24, 1907, resulting in a total loss of the goods covered by the policy.

The defenses to the action relied on were, first, those arising under the iron safe clause of the policy; and, second, fraud and false swearing touching the subject matters involved in the suit, which were set out in the written grounds of the defendant's defenses, but in so far as it was alleged that the plaintiff had been guilty of false swearing in regard to his losses, the removal of goods from the store prior to the fire, the entry on such books as he claimed to have kept of all goods removed from the store, and that the plaintiff caused or connived at the fire in question, the grounds of defense are waived in the argument in this court; so that the case turns upon whether or not the judgment of the circuit court upon the demurrer to the evidence should have been for the defendant, upon the grounds that the plaintiff had not taken, kept and produced the inventories of his stock of merchandise, nor the set of books, he was required to take, keep and produce by the iron safe clause of the policy sued on.

The iron safe clause is as follows:

(1) "The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days after the issuance of this policy, or the policy shall be null and void from such date, and upon the demand of the assured the unearned premium from such date shall be returned.

(2) "The assured shall keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in the first section of this clause, and during the continuance of this policy.

(3) "The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when

the building mentioned in this policy is not actually open for business; or failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The contention of the defendant is that the plaintiff is not entitled to recover on the policy for the reasons, first, that he failed to keep and produce certain inventories required by the policy, viz.: the inventories said to have been made by him in April and October, 1907; second, that the inventory dated January 1, 1907, was not such an inventory as he was required to take and produce, in that a number of the articles contained therein were put down in lump sums, or the entire bills listed, without being separated into their necessary component parts; and, third, that the so-called "cash book" produced by the plaintiff is insufficient in that it does not comply with the requirements of the iron safe clause of the policy.

It would be difficult to find a more unsatisfactory compliance with the iron safe clause of an insurance policy covering a stock of general merchandise than is offered in evidence in this case. The inventory produced and claimed to have been made January 1, 1907, months before the policy was issued, is a mere statement of articles put down in lump sums, or entire bills are put down at a gross sum, and no statement made as to the number of the several articles named, or their quality or cost price. To illustrate the character of this so-called inventory, we have only to mention a few of the various articles embraced therein, viz.: 1 case of jewelry, $250; 1 bill of medicine, $10; 1 bill of shoes, $61.50; "to bill of hats," $22.50; "to bill of shoes," $67.40; "1 bill dishes," $45.84; "lamps," $6.30; glass assortment, $9.50.

There is nothing unreasonable in the requirements of the

"iron safe clause" found in every policy of insurance issued on a shifting stock of merchandise. Under that clause the insurer has a right to such a compliance with its terms as will inform him during the life of the policy, fairly and intelligently, as to the stock of merchandise carried by the insured, and, in case of loss by fire, as to the stock of merchandise burned and the fair cash value thereof; and it is no hardship upon the insured to comply with this requirement of his policy. Any other rule would open wide the doors for the perpetration of frauds and the grossest impositions upon insurers.

Lexicographers say that "an inventory is an itemized list of the various articles constituting a collection, estate, stock in trade, etc., with their values."

In *Fire Asso. of Phil.* v. *Calhoun,* 28 Tex. Civ. App. 409, 67 S. W. 153, it is said: "The ordinary and accepted meaning of the word 'inventory' is an itemized list or enumeration of property, article by article. Where a fire policy provided that, unless a complete inventory of the stock covered had been made within twelve months prior to its issue, one should be taken within thirty days, or the policy would be void, and the only inventory taken included such articles as 'hardware, $25; Marble City Drug Co., $53.66,' etc., the policy was not complied with, such an enumeration of articles not constituting an inventory." *Roberts, &c.,* v. *Sun. Mut. Ins. Co.,* 19 Tex. Civ. App. 338, 48 S. W. Rep. 559; *So. Fire Ins. Co.* v. *Knight,* 111 Ga. 622, 36 S. E. 821, 78 Am. St. Rep. 216, 52 L. R. A. 73.

It is difficult to see how such an enumeration of articles, as was made by the plaintiffs in the cases just referred to and in this case, would operate to defeat the very purpose of the "iron safe clause" in the policy. Here the plaintiff has lumped about one-tenth of the so-called inventory said to have been made January 1, 1907, and if the case of jewelry, for instance, put down in lump at $250, had been listed item by item, the defendant would have been fully informed as to what was contained in the

case and been able to have shown, if such was the fact, that the value thereof was much less than the lump sum stated.

The default and neglect of the plaintiff in not complying with the "iron safe clause" of his policy is accentuated by the fact, admitted by him, that he undertook to make in April and October, 1907, detailed inventories of his stock of goods, which were never completed, and were not preserved, as would have been the case had he complied with the terms of his policy, but on the contrary they were left in the store unprotected and were burned. These inventories, according to his own admissions, were more nearly a compliance with his duty to the defendant and with the law than the one he relied on, claimed to have been made January 1, 1907. The default and negligence of the plaintiff going to defeat his right of recovery on the policy is all the more apparent from the evidence as to his non-compliance with the "iron safe clause" with respect to keeping a set of books, etc.

There is no way whatever by which the insurer can know to what extent a stock of merchandise has been depleted, if such be a fact, without a compliance on the part of the insured with the terms of the "iron safe clause" of his policy with respect to the set of books he agreed to keep.

It is very true that the court held in *Prudential Ins. Co.* v. *Alley,* 104 Va. 356, 51 S. E. 812, that it is not necessary that the books should show the *articles* sold, provided they show the *total amounts* for which they were sold; and in *N. B. & M. Ins. Co.* v. *Edmundson,* 104 Va. 486, 52 S. W. 350, that a substantial compliance with the requirements of a fire insurance policy, including the "iron safe clause," and the provisions as to proof of loss, is all that can be reasonably exacted; and that it is not necessary that the books should show the *prices* for which the goods were sold, provided they show the articles sold; nor is it necessary to show whether they were sold for cash or on credit; but neither of those cases apply to the facts in this case, which call for a more stringent application of the rule laid down in the first-named case than the facts

proved therein called for.   Alley's sales were all for cash; therefore his cash account, into which nothing went but proceeds of sales, without a list of sales, was evidence of what he was selling; and in the other case, Edmundson made but two sales after the inventory taken by him in accordance with the requirements of the policy.   They were entered on the book containing the inventory, which was preserved and offered in evidence, and stated the articles sold, to whom, when and at what price.

In this case a large business was being conducted, and sales made daily for both cash and credit.   Not a single item of cash sales was entered, but the proceeds of the credit sales were mingled with the proceeds of the cash sales, without any distinguishing mark or token, the amount of the cash sales being only ascertainable by the parol evidence of the plaintiff as to what went into his cash account.   It is inconceivable that "a complete record of the business transacted" could be kept without distinguishing cash from credit, and making entries indicating what the cash received was for.

In *Everett-Ridley, &c., Co.* v. *Traders Ins. Co.,* 121 Ga. 228, 48 S. E. 918, 104 Am. St. Rep. 100, it is said: "The intention of this clause ('iron safe clause') of the contract is to enable the insurance company, by means of accurate records of the business of the insured, to ascertain with substantial certainty and definiteness the value of the stock of goods destroyed by fire.   .   . A cash book which only shows the amount of cash taken in at the end of each day, giving no indication of the source from which the cash is derived, whether from cash sales, from the payment of past due bills, or what not, can in no sense be considered a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit."   See also *Pelican Ins. Co.* v. *Wilkinson,* 53 Ark. 353, 13 S. W. 1103; *Western Ins. Co.* v. *McGlothry,* 115 Ala. 213, 22 South. 104, 67 Am. St. Rep. 26.

It is argued, however, that the contract "did not require Sherman to keep any books whatever prior to May 1" (1907), but

this contention falls when it is considered that the first paragraph of the "iron safe clause" in his policy gave him the choice to rely upon an inventory taken within twelve months prior to the date of the policy or to take one within thirty days thereafter; that the second paragraph of the clause bound him to keep a set of books from date of the inventory, as provided for in the first paragraph, and during the continuance of the policy. He relied, at the trial, upon the inventory claimed to have been taken January 1, 1907, more than four months prior to the issuance of the policy, and disregarded the provision of the contract requiring him to keep a set of books *from the date of the inventory* and during the continuance of the policy, showing a complete record of the business he transacted.

The evidence clearly shows that the plaintiff had an old ledger for the year 1906, which lapped over and carried a part of his credit sales and collections for January, 1907, which ledger was burned, and his cash book entries covered collections from the old ledger as well as from a new ledger put in evidence; but neither he (the plaintiff) nor his clerk could form an estimate of the amount of business done in the store after January 1, 1907; so that even if the plaintiff could have shown (as he could not) how many of the entries on his cash book were derived from collections taken from the ledger in evidence, he was unable to show the amounts taken from the ledger that had been burned.

To go over here the evidence in detail would serve no other purpose than uselessly to prolong this opinion. The plaintiff relied greatly upon his cash book, the entries upon which were usually made, as he stated, after his day's sales were over and he had counted his cash in hand, but from these entries and his attempted explanations thereof, it was a matter of impossibility to form an intelligent conclusion as to what business he had transacted or what stock of goods was in the store and destroyed by the fire. A majority of the entries on the ledger are without date, and the evidence leaves no room to doubt that the entries in

the so-called cash book, writings and figures included, were all made with the same colored lead pencil, all written in the same handwriting and upon a clean and unsoiled book, showing that it was just such a book as might have been written up at one time and after the fire, and was not such a cash book as was required of the insured. The plaintiff was examined especially as to ninety-two of the credits on the ledger, made on thirty-six dates, from January 18 to December 1, 1907, aggregating $556.81, and he stated facts by way of explanation as to only four of them, but those explanations were contradictory of his books.

Upon an examination of the whole evidence it is clear that the jury would not have been warranted in finding that there had been a substantial compliance on the part of the plaintiff with the terms of his policy, either with respect to the inventory of the stock of goods required or the set of books stipulated for, showing a complete record of the business transacted by him. Therefore we are of opinion that the judgment of the circuit court should be reversed, the demurrer to the evidence sustained, and judgment entered here in favor of the defendant.

*Reversed.*