Abraham TOW, Appellant,

v.

MINERS MEMORIAL HOSPITAL ASSO-CIATION, INC., a corporation, Appellee.

No. 8546.

United States Court of Appeals Fourth Circuit.

Argued April 2, 1962.

Decided June 15, 1962.

John E. Davis and Edward H. Tiley, Charleston, W.Va. (Kay, Casto & Chaney, Charleston, W. Va., on the brief), for appellant.

Harold H. Bacon, Washington, D. C. (Val J. Mitch, Washington, D. C., and M. E. Boiarsky, Charleston, W. Va., on the brief), for appellee.

Before SOPER, BOREMAN and BRYAN, Circuit Judges.

BOREMAN, Circuit Judge.

Dr. Abraham Tow, plaintiff, was employed in December 1958 as Chief of Pediatrics in the Man Memorial Hospital at Man, West Virginia, which was one of several hospitals owned and operated by defendant. In November 1959, defendant terminated Dr. Tow's employment and in this action plaintiff seeks to recover damages for a breach of his employment contract. A detailed account of the facts is presented by the District Court in its opinion, 199 F.Supp. 926.

Defendant's motion for summary judgment was denied but was subsequently renewed. The District Court granted the later motion, entered judgment for the defendant, and plaintiff appeals.

Prior to joining the Man Memorial staff, Dr. Tow practiced pediatrics in New York City, where, after some preliminary correspondence with Dr. Sarah Knutti, defendant's Associate Clinical Director, in Washington, D. C., and a personal interview with her and the Clinical Director, he accepted a telephoned offer from Dr. Knutti of employment at the West Virginia hospital. The terms of the oral offer and acceptance were based upon information supplied Dr. Tow when he first inquired about the position which defendant was seeking to fill. Part of the material sent to Dr. Tow prior to the offer was a memorandum entitled "IN-FORMATION FOR APPLICANTS FOR MEDICAL STAFF APPOINTMENTS," a portion of which reads as follows:

"Full-time salaried physicians receive *a letter type contract stating that 'Your employment will not be terminated except by mutual consent or for just cause.* In the event of disagreement regarding termination, the matter will be referred to a board of physicians of the MMHA [Miners Memorial Hospital Association] for opinion and recommendation.'" (Emphasis added.)

On the same day that Dr. Knutti orally offered plaintiff the position at Man Memorial, she wrote him confirming the oral agreement, omitting all reference to tenure, and stated, among other things, that a formal appointment letter would follow. A few days after his telephone conversation with Dr. Knutti, Dr. Tow received at his New York office a letter from Dr. Meade, defendant's Clinical Director, enclosing a brief formal appointment letter dated December 5, 1958, from Dr. Morrison, president of defendant's board of directors. Dr. Meade stated in his letter that he was "outlining * * * here the details of your appointment." It was further stated in the letter: "This appointment is to remain in effect *as long as you render satisfactory service in carrying out the Association's medical and hospital care program* as presently constituted." (Emphasis added.) Dr. Tow indicated his acceptance of the appointment by signing three copies of Dr. Morrison's letter and returning them to defendant as requested. He replied by letter to Dr. Meade, acknowledged the receipt of the latter's letter, stated that he was looking forward to the association with the organization and made no objection to any of the employment terms stated in the letter from Dr. Meade. No other letter-type contract, such as referred to in the "information sheet," was sent to Dr. Tow. All of these negotiations and happenings were in December 1958. Plaintiff moved to Man, West Virginia, and assumed his new duties in defendant's hospital there in January 1959.

The sole question before us is whether the District Judge properly granted defendant's motion for summary judgment. Preliminarily, however, we must consider and determine a conflict-of-laws question. This action was instituted in the Southern District of West

Virginia, thus the conflicts law of West Virginia is applicable. Klaxton Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Examining that law, we find that the contract here in question was made in New York because there the last event occurred necessary to make a binding agreement; the substantive law of New York controls the making of the contract. See Galloway v. Standard Fire Ins. Co., 45 W.Va. 237, 31 S.E. 969, 970 (1898). New York's law governs also the nature, construction and validity of the contract. See Klinck v. Price, 4 W.Va. 4, 6 Am.Rep. 268 (1870); Boyd v. Pancake Realty Co., 131 W.Va. 150, 46 S.E.2d 633 (1948). Looking again to the conflicts law of West Virginia, we find that the substantive law of that state controls the *performance* of the contract since it was to be performed in West Virginia. See Boyd v. Pancake Realty Co., supra.

It is plaintiff's contention that one of the binding provisions of his contract with defendant was that his employment would not be terminated except upon mutual consent or *for just cause*. Defendant contends that plaintiff's contract was consummated on the basis, and according to the terms and conditions, of the letters sent to him by Doctors Meade and Morrison on December 5, 1958; that by those terms Dr. Tow could be dismissed if his services were unsatisfactory to the Hospital Association. The District Court held that Dr. Tow was bound by the terms of the Meade-Morrison letters in spite of the apparent conflict between one of those terms and the information previously sent to Dr. Tow on the basis of which he claims to have entered into a binding agreement of employment. Plaintiff argues that an issue of fact as to the terms of the contract is presented for jury determination and that the District Court erred in holding that the court should determine the terms of the contract as a matter of law.

We reach the conclusion that the terms stated in the Meade-Morrison letters are, as a matter of law, the terms of the employment. We accept plaintiff's contention that there was an oral agreement between himself and Dr. Knutti on December 3, 1958, prior to his receipt of the Meade-Morrison letters and that that agreement incorporated the terms of the "information sheet" with respect to tenure. However, both the "information sheet" and Dr. Knutti's letter of December 3, 1958, confirming the oral offer and acceptance, indicated that a letter-type contract or appointment letter would be sent to Dr. Tow. Accordingly, the negotations and the oral agreement were *integrated* in the Meade-Morrison letters, the only formal written manifestation of the agreement.

It must be conceded that Dr. Meade's letter did not accurately state the understanding previously reached by the parties with respect to tenure. Dr. Tow, nevertheless, acknowledged Dr. Meade's letter without mentioning the substituted provision concerning termination of employment and indicated his acceptance of the offered position by signing and returning Dr. Morrison's letter. "It was not necessary that both parties should sign the contract [i. e., Dr. Meade's letter, which constitutes part of the contract here] to make it an agreement in writing. If a person has accepted a written agreement and has acted upon it he is bound by it, although he may not have set his hand to the document." Newburger v. American Surety Co., 242 N.Y. 134, 151 N.E. 155, 157 (1926). Dr. Tow commenced his performance several weeks after his receipt of the Meade-Morrison letters, thereby indicating acceptance of their terms.

Restatement of the Law of Contracts § 228 (1932) is pertinent here:[1]

"§ 228. What is Integration.

An agreement is integrated where the parties thereto adopt a writing

---

[1.] The law of New York apparently is not inconsistent with § 228 of Restatement of Contracts. See St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N.Y. 30, 138 N.E. 495 (1923).

or writings as the final and complete expression of the agreement. An integration is the writing or writings so adopted.

\* \* \* \* \* \*

"Illustrations:

\* \* \* \* \* \*

"2. A and B make an oral contract by which A agrees to employ B on certain terms of employment. Immediately thereafter B writes A a letter beginning, 'Confirming our oral arrangement this morning.' B then proceeds to state the contract as he understands it. He does not, however, state it in all respects accurately. A makes no reply to the letter. A, thereafter, allows B to enter on the agreed employment. There is an integration. A's acquiescence in B's version of the contract by acceptance of services is a manifestation of assent to the writing as a final and complete expression thereof."

In Brainard v. New York Cent. R. R., 242 N.Y. 125, 151 N.E. 152, 154, 45 A. L.R. 751 (1926), where facts involved were different from those in the case at bar, the Court of Appeals of New York stated the principle of contract construction which we think is applicable here:

" \* \* \* The construction of a plain contract is for the court. The intention of the parties is found in the language used to express such intention. Hartigan v. Casualty Co. of America, 124 N.E. 789, 227 N.Y. 175. If the court finds as matter of law that the contract is unambiguous, evidence of the intention and acts of the parties plays no part in the decision of the case. Plain and unambiguous words, undisputed facts, leave no question of construction except for the court. The conduct of the parties may fix a meaning to words of doubtful import. It may not change the terms of a contract."

We have already shown that the District Court concluded, as a matter of law, that the Meade-Morrison letters constituted the final expression of the agreement. There is no ambiguity in the terms of those letters with respect to the contract-termination provision. We consider inapposite the cases relied upon by plaintiff which hold that a jury should determine the intent of the parties in interpreting an *ambiguous* contract.

■■ It is not disputed that the Hospital Association considered plaintiff's services as Chief of Pediatrics at the Man Memorial Hospital unsatisfactory (he was offered "a lesser position" at another hospital operated by defendant but did not accept it) or that a Board of Review, after taking evidence including Dr. Tow's testimony, found that he was not capable of functioning in the position he held at Man Memorial under the peculiar circumstances then existing there. Dr. Tow does question the *basis* of the Hospital Association's and Board's conclusions and argues that a jury should have the opportunity to determine the reasonableness of defendant's decision. In the contract finally agreed upon, Dr. Tow did not insist upon retention of the "just cause" provision for termination but assented to a provision whereby he was to furnish services satisfactory to the defendant. The contract was to be performed in West Virginia.[2] "[W]here a person contracts to \* \* \* do work to the satisfaction of another, such other is \* \* \* the sole judge of the quality of work done, and his right to accept or reject it is absolute, conclusive, and binding upon the parties, without the investigation of his reasons, unless he acts fraudulently. Barrett v. Raleigh Coal & Coke Co., 51 W.Va. 416, 41 S.E. 220, \* \* \*." Blue v. Hazel-Atlas Glass Co., 106 W.Va. 642, 147 S.E. 22, 25 (1929). Under the circumstances of this case, "a jury would not have been authorized to disbelieve the officials who \* \* \* [asserted] a real dissatisfaction and the court did not err in \* \* \* [granting

---

**2.** Performance is controlled by West Virginia law. See Boyd v. Pancake Realty Co., 131 W. Va. 150, 46 S.E.2d 633 (1948).

the motion for summary judgment] for the defendant." Shepherd v. Union Central Life Ins. Co., 74 F.2d 180, 183 (5th Cir. 1934). See 35 Am.Jur. Master and Servant § 28 (1941).

Other matters are discussed at length in the written opinion of the District Court, but we need not consider them since we conclude that the court's ruling should be sustained for the reasons herein stated.

Affirmed.