**BRAND DISTRIBUTORS, INC.,**
**Plaintiff,**

**v.**

**INSURANCE COMPANY OF NORTH**
**AMERICA, Defendant.**

**Civ. A. No. 74–28–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Oct. 2, 1974.

---

11. The mortgage of the United States would, of course, have taken priority even if Stoutenberg had followed this course.

James M. Gallagher, Hofheimer, Nusbaum & McPhaul, Norfolk, Va., for plaintiff.

Edward A. Marks, Jr., Archibald Wallace, III, Sands, Anderson, Marks & Clarke, Richmond, Va., for defendant.

## MEMORANDUM OPINION

KELLAM, Chief Judge.

Brand Distributors, Inc. operated a jewelry store on Poplar Hall Drive, Norfolk, Virginia. Insurance Company of North America, through its agent in Norfolk issued a Jeweler's Block Policy No. JB 29381 to cover said premises against loss by theft. On July 23, 1973 two unidentified persons entered said premises and removed, at gunpoint, diamond merchandise.

### I

After commencement of the trial of this case with a jury, and after plaintiff had presented some evidence, the parties agreed that the loss which occurred on July 23, 1973, was covered by the policy; that proper notice of the loss had been given; that the amount which plaintiff was entitled to recover under the policy for diamond watches was $4,864.85, for gold bracelets, $598.76, and customers' property, $933.15. As to the amount of recovery for other items, it was agreed the only issue was an interpretation of the terms of the insurance policy which was for the Court, taking into consideration the evidence presented.

It was stipulated that the acquisition cost of the diamonds in issue was $61,465.06, and that if the plaintiff's interpretation of the policy is correct, it should recover $78,521.84. Further, it was stipulated that interest ran on the liquidated obligation from October 20, 1973.

Each party agrees plaintiff is entitled to recover a total of $6,396.76 for loss of diamond watches, gold bracelets and customers' property. Plaintiff says it is also entitled to recover $78,521.84 for loss of diamonds, or a total of $84,918.-60. Defendant says the amount of recovery for loss of diamonds is $61,465.-06, for a total of $67,861.82.

The difference in dispute arises over an interpretation of the language or terms of the policy. Plaintiff asserts its right of recovery is the actual cash value of the lost property at the time of the loss, not to exceed the cost of replacement, which may be determined by presentation of oral evidence. It says that any wholesaler of diamonds can take the list of items lost and determine the fair market value of such diamonds at the time of the loss. Defendant says that the policy limits the recovery to the lowest figure put upon the stolen items in plaintiff's inventory records.

To prove the market value or replacement cost of the some 300 diamond items lost plaintiff offered the testimony of two salesmen or dealers in diamonds. While they had not attempted to inspect the report of the items stolen, they were of the opinion that the prices of the diamonds have increased 40 to 50

per cent between the time of the purchase of said items and the date of the loss.

Plaintiff maintained unit control cards on all diamonds, "which said unit control cards constitute a perpetual inventory of such merchandise and which said unit control cards constitute full compliance with paragraph 8(A) of the aforesaid policy" of insurance.[1] The card contains a diamond control number, recitation of the retail value, an alphabetical code reflecting acquisition cost, the name of the supplier, a cross-reference to the supplier's invoice, the date stocked, and a description or sketch of the item. These cards were prepared for each diamond when it was brought upon the premises. The card remained in the card file until the item was sold or taken from the premises. The only change made to the information on the card was to increase the selling price of an item.

The applicable provisions of the policy are those contained in paragraphs numbered 8(A) and 9(A). They are:—

8. *RECORDS* It is a condition of this insurance that:

(A) The assured will maintain a detailed and itemized inventory of his or their property and separate listing of all travelers stocks in such manner that the exact amount of loss can be accurately determined therefrom by the Company.

9. *VALUATION*

(A) The company shall not be liable beyond the actual cash value of the property at the time of any loss or damage and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed the lowest figure put upon such property in the Assured's inventories, stock books, stock papers or lists existing at the time the loss occurred, nor the cost to repair or replace the same with material of like kind and quality. Any antiquarian or historical value attaching to the said property shall be excluded from the estimate of loss or damage.

## II

■■ Jurisdiction is alleged by reason of diversity, defendant asserting it is a foreign corporation. In diversity cases, the Court is bound by and must follow the law of the State. *C.I.R. v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L. Ed.2d 1126 (1958); *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); *St. Paul Fire and Marine Ins. Co. v. Lack*, 476 F.2d 583 (4th Cir. 1973); *Sides v. Richard Machine Works, Inc.*, 406 F.2d 445 (4th Cir. 1969). In diversity of citizenship cases, the federal courts, when deciding questions of conflict of laws, must follow the rules prevailing in the states in which they sit. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Griffin v. McCoach*, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941); *Ruhlin v. New York Life Ins. Co.*, 304 U.S. 202, 208, 58 S.Ct. 860, 82 L.Ed. 1290 (1938); *New York Life Ins. Co. v. Jackson*, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329 (1938); *Rosenthal v. New York Life Ins. Co.*, 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330 (1938); *Erie Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Hence the law of the Commonwealth of Virginia on Conflict of Laws is to be applied.

■ In Virginia, everything governing the making of a contract is governed by the place where the contract is made, *Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 177 S.E.2d 610 (1970); *Arkla Lum-*

---

1. Stipulation between the parties set forth in final pre-trial order.

*ber & Mfg. Co. v. West Virginia Timber Co.,* 146 Va. 641, 132 S.E. 840; *Scudder v. Union Nat'l. Bank,* 91 U.S. (I Otto) 406, 23 L.Ed. 245 (1875); *Sterling v. Blackwelder,* 302 F.Supp. 1125 (E.D. Va.1968), aff'd. 414 F.2d 1362 (4th Cir. 1969), Michie's Jur. Vol. 4, title Conflict of Laws § 24 page 56, and everything governing performance by the place where it is to be performed, *Irving Trust Co. v. Day,* 314 U.S. 556, 62 S.Ct. 398, 86 L.Ed. 452 (1942); *Scudder v. Union Nat'l. Bank, supra; Arkla Lumber & Mfg. Co. v. West Virginia Timber Co., supra; Norman v. Baldwin,* 152 Va. 800, 148 S.E. 831 (1929); *Hogue-Kellogg Co., Inc. v. G. L. Webster Canning Co., Inc.,* 22 F.2d 384 (4th Cir.), cert. denied 277 U.S. 592, 48 S.Ct. 529, 72 L. Ed. 1004 (1927); *Tow v. Miners Memorial Hospital Ass'n.,* 305 F.2d 73 (4th Cir. 1962); *KECO Indus., Inc. v. ACF Indus., Inc.,* 316 F.2d 513 (4th Cir. 1963); *Toyomenka, Inc. v. Mount Hope Finishing Co.,* 432 F.2d 722 (4th Cir. 1970); *Heavner v. State Automobile Mut. Ins. Co.,* 350 F.Supp. 859 (W.D. Va.1972); Vol. 4 Michie's Jur., subject Conflict of Laws § 20 page 53; Vol. 16 Am.Jur.2d, subject Conflict of Laws § 48 page 46.

■ Virginia decisions are in accord with the general rule that the interpretation of the insurance contract depends upon the law of the place where the contract was delivered. *Woodson v. Celina Mut. Ins. Co.,* 211 Va. 423, 177 S.E.2d 610 (1970); *Lackey v. Virginia Surety Co.,* 209 Va. 713, 167 S.E.2d 131 (1969); *Mutual Life Ins. Co. of New York v. Johnson,* 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398 (1934); *Northwestern Mutual Life Ins. Co. v. McCue,* 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419 (1912); *Hardware Mut. Casualty Co. v. Wendlinger,* 146 F.2d 984, 989 (4th Cir. 1944), cert. denied 324 U.S. 882, 65 S.Ct. 1029, 89

L.Ed. 1432; *Harrison v. Carroll,* 139 F. 2d 427 (4th Cir. 1943); *Farmer v. Fidelity & Casualty Co.,* 249 F.2d 185 (4th Cir. 1957); *United Services Life Ins. Co. v. Moss,* 303 F.Supp. 72 (W.D.Va. 1969).

■ Unless otherwise provided in the contract or by statute, a contract is made where the last act necessary to give the contract validity is performed. *Equitable Life Assurance Society v. Clements,* 140 U.S. 226, 11 S.Ct. 822, 35 L.Ed. 497 (1891); *Toyomenka, Inc. v. Mount Hope Finishing Co.,* 432 F.2d 722 (4th Cir. 1970); *KECO Indus., Inc. v. ACF Indus., Inc.,* 316 F.2d 513 (4th Cir. 1963); *Tow v. Miners Memorial Hospital Ass'n.,* 305 F.2d 73 (4th Cir. 1962); *Hogue-Kellogg Co., Inc. v. G. L. Webster Canning Co., Inc.,* 22 F.2d 384 (4th Cir.), cert. denied 277 U.S. 592, 48 S.Ct. 529, 72 L.Ed. 1004 (1927). 4 Michie's Jur. page 53, subject, Contracts, ¶ 22. Pursuant to the provisions of Virginia Code 38.1–282, the defendant insurance company was authorized to transact business in the State of Virginia only through a regularly constituted resident agent licensed in this State, and pursuant to Virginia Code 38.1–283, any policy issued to cover a subject of insurance located or to be performed in Virginia must be countersigned by a licensed resident agent of the Company.[2]

■ The last act necessary to give the contract validity was done in Virginia, the contract was delivered in Virginia, was to be performed in Virginia, was issued and countersigned by a resident agent of the Company in Virginia, and therefore is to be applied and construed according to the laws of Virginia.

■ The general rule, and the rule applicable in Virginia, governing the interpretation of insurance contracts is that the terms and conditions of an insurance contract are to be considered

---

2. When a policy provides it is not valid until countersigned by agent at a certain place, it is a contract of that place. *Galloway v. Standard Fire Ins. Co.,* 45 W.Va. 237, 31 S.

E. 969 (1898); *S. M. Smith Ins. Agency v. Hamilton Fire Ins. Co.,* 69 W.Va. 129, 71 S. E. 194 (1911).

the same as in other contracts, subject only to the provisions of law affecting insurance contract. The courts have neither the duty nor the power to make the contracts, but the function to construe them. Where the meaning of the language is clear, a contract needs no interpretation. It speaks for itself. The courts are bound to adhere to it as the authentic expression of the intention of the parties and as their firm agreement. In the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement. *Quesenberry v. Nichols*, 208 Va. 667, 159 S.E.2d 636, 640 (1968); *Pilot Life Ins. Co. v. Crosswhite*, 206 Va. 558, 561, 145 S.E.2d 143, 146 (1965); *American Home Assurance Co. v. Hughes*, 209 Va. 514, 165 S.E.2d 411 (1969); *Carter v. Carter*, 202 Va. 892, 121 S.E.2d 482, 485 (1961), and cases there cited; *Bergholm v. Peoria Life Ins. Co.*, 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416 (1932); *Hardware Mut. Casualty Co. v. Wendlinger*, 146 F.2d 984, 989 (4th Cir. 1944), cert. denied 324 U.S. 882, 65 S.Ct. 1029, 89 L.Ed. 1432; *Farmer v. Fidelity & Casualty Co.*, 249 F.2d 185 (4th Cir. 1957).

 In the absence of ambiguity contracts of insurance must be construed according to the terms the parties have used, to be taken and understood and given effect in accordance with their plain meaning, and in their ordinary and popular sense. *Bergholm v. Peoria Life Ins. Co., supra*, 284 U.S. at 492, 52 S.Ct. 230. An insurance company may provide in its policy for the amount to be paid and the risks and hazards assumed, it may exclude from the contract risks not assumed, so long as not in violation of law and not inconsistent with public policy. *Quesenberry v. Nichols, supra; Carter v. Carter, supra; Darden v. North American Ben. Ass'n.*, 170 Va. 479, 197 S.E. 413 (1938). Contracts of insurance are to be liberally construed in favor of the insured, and if there are ambiguities in the contract, they must be construed in favor of the insured and against the drafter of the policy, but if the language is plain and clear and not in violation of law or inconsistent with public policy, the Court is bound to adhere to the terms of the policy, and to construe the policy as written. *Quesenberry v. Nichols, supra; American Homes Ass'n v. Hughes, supra; Bergholm v. Peoria Life Ins. Co., supra; Rowe v. United States Fidelity & Guaranty Co.*, 375 F.2d 215 (4th Cir. 1967).

 Ambiguity means doubtfulness, uncertainty, doubleness of meaning, difficult to comprehend or distinguish, of doubtful import, open to various interpretations, or wanting clearness or definiteness. It is defined to mean uncertainty of meaning of an expression used in a written instrument, words capable of more senses than one, or language open to various interpretations; words which are capable of more than one conclusion. A word or phrase is said to be ambiguous only when it is found to be of uncertain meaning by persons of competent skill and information; that is, when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of customs, practices, usage and terminology as generally understood in the particular trade or business. Vol. 3A C.J.S. Ambiguity pages 408 and 412. See also *Ayres v. Harleysville Mut. Casualty Co.*, 172 Va. 383, 2 S.E.2d 303, 307 (1939).

It is the duty of the Court to construe the contract. *Swift & Co. v. Hocking Valley Railway Co.*, 243 U.S. 281, 289, 37 S.Ct. 287, 61 L.Ed. 722 (1917); *Brown Lumber Co. v. Louisville & Nashville R. Co.*, 299 U.S. 393, 397, 57 S.Ct. 265, 81 L.Ed. 301 (1937); *Quesenberry v. Nichols, supra*, 159 S.E.2d 640; *Eppes v. Eppes*, 169 Va. 778, 195 S.E. 694, 702 (1938); *Norfolk Motor Exchange, Inc. v. Grubb*, 152 Va. 471, 147 S.E. 214, 216 (1929), 63 A.L.R. 310; *Carpenter v. Town of Gate City*, 185 Va. 734, 40 S.E.

2d 268 (1946). *Greater Richmond Civic Recreation, Inc. v. A. H. Ewing's Sons, Inc.*, 200 Va. 593, 106 S.E.2d 595 (1959); *Main-Atlantic Corp. v. Francis I. duPont & Co.*, 213 Va. 180, 191 S.E.2d 211, 215 (1972); *Tow v. Miners Memorial Hospital Ass'n., supra; Revel v. American Export Lines, Inc.*, 162 F.Supp. 279 (E.D.Va.1958), aff'd. 266 F.2d 82 (4th Cir. 1959). The construction of insurance contracts is governed by the same general rules as are applied to the construction of other written contracts, and the function of the Court is to construe them, not to make them. *Quesenberry v. Nichols, supra,* 159 S.E.2d 640; *Carter v. Carter, supra; Greenwood v. Royal Neighbors of America,* 118 Va. 329, 87 S.E. 581 (1916); *Bergholm v. Peoria Life Ins. Co., supra.*

### III

The requirement of paragraph 8(A) of the policy is the keeping of a record from which the extent of loss can be determined with reasonable certainty, without resort to parol evidence, except for the purpose of explaining the entry or manner of keeping the record. *Dickerson v. Franklin National Ins. Co.,* 130 F.2d 35, 38 (4th Cir. 1942); *Prudential Fire Ins. Co. v. Alley,* 104 Va. 356, 51 S.E. 812 (1905); *Hartford Fire Ins. Co. v. Farris,* 116 Va. 880, 83 S.E. 377 (1914). A substantial compliance with said provision is all that is required. *Liverpool, etc. v. Dillon,* 16 F.2d 744 (4th Cir.); *Lavenstein Bros. v. Hartford Fire Ins. Co.,* 125 Va. 191, 101 S.E. 331 (1919); *Scottish Union & Nat'l. Ins. Co. v. Virginia Shirt Co.,* 113 Va. 353, 74 S.E. 228 (1912); *Phoenix Ins. Co. v. Sherman,* 110 Va. 435, 66 S.E. 81 (1909); *Dickerson v. Great American Ins. Co.,* 125 W.Va. 135, 23 S.E.2d 117.

The evidence establishes that the unit control cards were the only records kept by plaintiff which would comply with the requirements of paragraph 8(A) of the policy. To determine a description of the items in their inventory or the value it was necessary to refer to the unit control cards: Inventories were taken at retail selling price, but they were reduced to cost or market, whichever was less, and shown on the unit control cards.

Briefly stated, defendant contends that pursuant to the provisions of paragraph 8(A), above set out, the plaintiff is required to maintain a "detailed and itemized inventory of his . . . property . . . in such manner that the exact amount of loss can be accurately determined therefrom by the company." It is agreed between the parties that the unit control cards constitute a perpetual inventory of the merchandise and a compliance with the requirement of the policy. Defendant says the exact amount of loss can be determined by the company by use of the recording on said unit control card inventory of the cost of the diamonds. That pursuant to paragraph 9(A), supra, the defendant's liability "shall in no event exceed the lowest figure put upon such property in the assured's inventories, stock books, stock papers or lists existing at the time the loss occurred . . . ." The said inventory or unit control cards contain only cost and the retail selling price. The lower of these items is the cost price.

Plaintiff says that it is entitled to recover the actual cash value of the property at time of the loss. Defendant agrees the policy contains this language, but says it is limited by the provisions of paragraph 8(A) requiring the keeping of an inventory "in such manner that the exact amount of loss can be accurately determined therefrom by the company," and by paragraph 9(A) which limits recovery to "the lowest figure put upon such property in the assured's inventories . . . existing at the time the loss occurred." Defendant says from the inventory unit control cards the company can tell the exact amount of the loss by taking the "low-

est" figure shown thereon, which is the cost price—the inventory price—the price plaintiff used in profit and loss statements and for income purposes. Plaintiff, however, says that the cost figure is not the "lowest figure put upon such property in the assured's inventories" (Par. 9(A) of the policy), i. e., it is not a figure it put upon the property, and that the provisions of paragraph 8(A) of the policy requiring the keeping of a detailed and itemized inventory "in such manner that the exact amount of loss can be accurately determined therefrom by the company" is met when it keeps a full description of the items so that persons familiar with the current prices of diamonds can estimate or give an opinion as to the current market value. Further, plaintiff says that paragraph 13 of the policy requires the assured to furnish proof of loss and in its proof of loss to furnish a list of the property, the market value, cash value and cost of each item and the amount claimed thereon. It says that it was therefore required to record the cost of each item.

Plaintiff and defendant each say that the language is not ambiguous, but is definite in meaning. It is agreed that the requirement of paragraph 8(A) of the policy relating to the maintaining of a detailed and itemized inventory of the property has been complied with, and that the unit control cards meet this requirement. It seems therefore to have been stipulated that the inventory is such that "the exact amount of loss can be accurately determined therefrom by the company," and that the unit control card record constitutes an inventory. It is the one used by plaintiff to meet the requirement of the provisions of paragraph 8(A) of the policy. It is the inventory used by plaintiff in its profit and loss statement, and in reporting income for state and federal tax purposes.

Inventories were taken by plaintiff January 31, 1972 and January 31, 1973 at retail selling prices, but for purposes of internal accounting, they were reduced to cost or market, whichever was less. Hence the cost price on the unit control cards was used as inventory, except where cost was more than market value, and when so, market value was used. The figures used in the inventory are figures which plaintiff put upon its merchandise when preparing profit and loss statements and tax returns. Paragraph 9(A) limits recovery to actual cash value, less depreciation, but actual cash value "shall in no event exceed the lowest figure put upon such property in the assured's inventories." Plaintiff designates the figure for inventory. If the market is less than cost, it uses market. Plaintiff makes the determination of what figure will be used in the inventory. It has stipulated the cost price is the inventory figure [3] [except in instances where market is less]. It is the "lowest figure put upon such property in the assured's inventories." The unit control card is the detailed inventory required by paragraph 8(A) to be kept "in such manner that the exact amount of loss can be accurately determined therefrom by the company." Unless this was so, the unit control cards would not meet the requirement of paragraph 8(A). Judge Parker pointed out in *Dickerson v. Franklin Nat. Ins. Co., supra*, that substantial compliance with the "iron safe" clause is required and the clause of the policy requiring the keeping of an inventory and the keeping of a set of books should be construed together, and these "provisions are satisfied when records are kept from which the extent of the loss . . . can be determined with reasonable certainty, without resort to parol evidence, except for the purpose of explaining the entries," and the insurer "has a right to such a compliance

---

3. The keeping of invoices does not constitute an inventory. *Hartford Fire Ins. Co. v. Farris*, 116 Va. 880, 83 S.E. 377 (1914);

*Fisher v. Sun Ins. Co. of London*, 74 W.Va. 694, 83 S.E. 729 (1914).

with its terms as inform him during the life of the policy, fairly and intelligently, as to the stock of merchandise carried by the insured, and in case of loss by fire, as to the stock of merchandise burned and the fair case value thereof." See also *Phoenix Ins. Co. v. Sherman, supra,* 66 S.E. 81, 83. Continuing further in the *Dickerson* case, Judge Parker at page 38 said that the inventory within the meaning of the iron safe clause "must contain a list of the articles insured sufficiently itemized to show the kinds and numbers or quantities thereof, 'together with their values at the time of making the [inventory], as nearly as they can be ascertained'." In dealing with the sufficiency of the inventory in that case, Judge Parker pointed out it failed to set forth the "grades or values" of the lumber.

But here, we have an inventory showing the items and the value of each item. Plaintiff has chosen to adopt the cost price of each item as its inventory value except where market value was less. The language in the policy, i. e., "shall in no event exceed the lowest figure put upon such property in the assured's inventories . . . existing at the time the loss occurred," is a limitation. It is clear and therefore binding on the insured.

Plaintiff is entitled to recover for the loss of the diamond watches, gold bracelets and customers' property taken in the agreed aggregate amount of $6,396.76, plus $61,465.06, which is the lowest value put upon the merchandise in the unit control cards which was stipulated by the parties to "constitute a perpetual inventory of such merchandise" in compliance with the provisions of the policy, for a total of $67,861.82, with interest from October 20, 1973, at six per cent per annum until paid.

Counsel will within ten days from this date present an endorsed order directing the Clerk to enter judgment for said sum.